**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
  *Plaintiff-Appellee,*

v.

RICKY G. STERLING,
  *Defendant-Appellant.*

No. 01-4264

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frederic N. Smalkin, Chief District Judge.
(CR-00-440-S)

Argued: November 2, 2001

Decided: March 8, 2002

Before WIDENER, WILKINS, and TRAXLER, Circuit Judges.

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Judge Wilkins and Judge Traxler joined.

## COUNSEL

**ARGUED:** Martin Gregory Bahl, FEDERAL PUBLIC DEFEND-
ER'S OFFICE, Baltimore, Maryland, for Appellant. Susan Quarn-
gesser Amiot, Assistant United States Attorney, Baltimore, Maryland,
for Appellee. **ON BRIEF:** James Wyda, Federal Public Defender,
Beth M. Farber, Assistant Federal Public Defender, Baltimore, Mary-
land, for Appellant. Stephen M. Schenning, United States Attorney,
Baltimore, Maryland, for Appellee.

**OPINION**

WIDENER, Circuit Judge:

Defendant Ricky Sterling (Sterling) appeals his jury trial conviction of two counts of being a felon in possession of a firearm. Sterling alleges the district court erred in refusing to suppress the physical fruits of a statement obtained in violation of *Miranda*. In addition, Sterling argues that his sentence of 262 months under the Armed Career Criminal Act, 18 U.S.C. § 924(e), violates *Apprendi* because his firearms conviction under 18 U.S.C. § 922(g) carried a maximum penalty of ten years. For the reasons that follow we affirm both the conviction and the sentence.

I.

On August 5, 2000 Baltimore City Police officers responded to a call for a domestic disturbance. The officers were met by Janet McGinnes, Sterling's wife, who informed the officers that Sterling had threatened to kill her and that he had two guns, a handgun and a shotgun.

There was conflicting testimony about whether Mrs. McGinnes gave the officers consent to enter the home. Sergeant John N. Sturgen of the Baltimore Police testified that she gave consent. Mrs. McGinnes testified that she did not give the officers permission to enter the house. The district court credited the officer's testimony over that of Mrs. McGinnes and found that there was express consent to enter the house.

After entering the house and receiving no response to a knock on the downstairs bedroom door, officers knocked on a rear, outside door leading to the basement bedroom. Sterling answered the door in his underwear. One officer restrained Sterling while the other officers searched for and found a handgun on the nearby bed. Sterling voluntarily stated that he never took the gun out of the house.

Sergeant Sturgeon then asked Sterling whether he had any other weapons. Sterling stated that there was another gun in the truck,

which was parked in front of the house. The police subsequently searched the truck and found a shotgun. Sterling was charged with possessing both the handgun and the shotgun.

Prior to trial, the district court denied Sterling's motion to suppress his statements and the physical evidence of the guns. The court first concluded that Sterling's wife expressly gave consent to enter the house and thus, since the officers had consent to search the house, there was no Fourth Amendment violation in seizing the pistol from the bedroom.

Secondly, the court held that the shotgun found in the pickup truck was admissible under *United States v. Elie*, 111 F.3d 1135 (4th Cir. 1997), because "there is no exclusionary rule that pertains to violations of *Miranda* when physical evidence is seized." Alternatively, citing *New York v. Quarles*, 467 U.S. 649 (1984), the district court noted that the gun was admissible under the public safety exception to the *Miranda* rule. In addition, the district court found that Mrs. McGinnes had also given consent to search the truck.

Both guns were admitted into evidence at trial and Sterling was convicted by a jury of both firearms counts charged in the indictment. The district court found, based on a preponderance of the evidence, that Sterling had three prior convictions which served as predicates under Armed Career Criminal Act, 18 U.S.C. § 924(e). As a result, the court sentenced Sterling to 262 months in prison and three years of supervised release.

Sterling first contends that the district court erred in refusing to suppress the shotgun found in the pickup truck as a result of his unwarned statement to police. The district court's legal conclusions underlying a suppression determination are reviewed de novo while its factual findings are reviewed for clear error. *United States v. Allen*, 159 F.3d 832, 838 (4th Cir. 1998).

Sterling argues that the Supreme Court's decision in *United States v. Dickerson*, 530 U.S. 428 (2000), which acknowledged *Miranda* as a constitutional decision, changed the legal landscape and negated our holding in *United States v. Elie*, 111 F.3d 1135 (4th Cir. 1997), where we declined to extend the "fruit of the poisonous tree" doctrine to

physical evidence discovered as a result of statements obtained in violation of *Miranda*. We disagree.

In *Elie*, we relied on two Supreme Court cases to find that the "fruits doctrine" is inapplicable in departures from *Miranda*: *Michigan v. Tucker*, 417 U.S. 433 (1974), and *Oregon v. Elstad*, 470 U.S. 298 (1985). In *Tucker* the Court declined to extend the fruits doctrine to testimony of a witness who was identified through a *Miranda* violation, while in *Elstad* the Court held that a voluntary statement given after *Miranda* warnings is admissible, notwithstanding prior unwarned statements, so long as both statements were not coerced. Although we recognized in *Elie* that "the Supreme Court has not specifically rejected application of the 'fruit of the poisonous tree' doctrine to physical evidence discovered as the result of a statement obtained in violation of *Miranda*," *Elie*, 111 F.3d at 1141, we concluded that the exceptions the Court established in *Tucker* and *Elstad* supported our holding that "derivative evidence obtained as a result of an unwarned statement that was voluntary under the Fifth Amendment is never 'fruit of the poisonous tree.'" *Elie*, 111 F.3d at 1142.

Subsequent to our *Elie* decision, the Court held in *Dickerson* that, as a Constitutional decision, *Miranda* could not be overruled by legislative action and reaffirmed that "*Miranda* and its progeny in this Court govern the admissibility of statements made during custodial interrogation in both state and federal courts." *Dickerson*, 530 U.S. at 431.

Although *Dickerson* held *Miranda* to be with Constitutional significance, *Miranda* only held that certain warnings must be given before a suspect's *statements* made during custodial interrogation can be admitted into evidence. In addition, we are of opinion that the Court's reference to and reaffirmation of *Miranda*'s progeny indicates that the established exceptions, like those in *Tucker* and *Elstad*, survive. Thus, the distinction between statements and derivative evidence survives *Dickerson*. In fact, *Dickerson* reiterated the distinction made in *Elstad* by stating that: "Our decision in that case — refusing to apply the traditional 'fruits' doctrine developed in Fourth Amendment cases — does not prove that *Miranda* is a nonconstitutional decision, but simply recognizes the fact that unreasonable searches under the Fourth

Amendment are different from unwarned interrogation under the Fifth Amendment." *Dickerson*, 530 U.S. at 441.

Of course after *Dickerson*, our observation in *Elie* that "[I]t is well established that the failure to deliver *Miranda* warnings is not itself a constitutional violation," *Elie*, 111 F.3d at 1142, is no longer the law. Similarly, to the extent that our decision in *Dickerson*, 166 F.3d 667 (4th Cir. 1999) (reversed), or 18 U.S.C. § 3501, or *Tucker*, or *Elstad,* suggested that *Miranda* was a prophylactic decision, that does not mean that *Miranda* was not a Constitutional decision as the Court's recent clarification in *Dickerson* sets out. So, in our opinion, *Dickerson* does not overrule *Tucker* or *Elstad*, and our holding in *Elie*, based on those two cases, survives. In that respect, we also note that overruling by implication is not favored. See *Agostini v. Felton*, 521 U.S. 203, 237 (1997); see also *Columbia Union Coll. v. Clarke*, 159 F.3d 151, 158 (4th Cir. 1998).

Accordingly, the shotgun found in the pickup truck was properly admitted into evidence.[1]

## II.

Sterling next argues that his sentence of 262 months under the Armed Career Criminal Act, 18 U.S.C. § 924(e), violates *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the government did not prove his three prior qualifying felony convictions beyond a reasonable doubt.

*Apprendi* held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. The exception for a prior conviction included in the *Apprendi* rule was based on *Almendarez-Torres v. United States*, 523 U.S. 224 (1998) (holding that 8 U.S.C. § 1326(b)(2), which authorizes increased sentence for a deported

---

[1]Because we find that the district court was correct to deny suppression of the shotgun based on *Elie*, we need not, and do not, address whether the district court was correct in applying the public safety exception of *New York v. Quarles*, 467 U.S. 649 (1984).

alien's illegal return if the deportation was subsequent to an aggravated felony conviction, is a penalty provision and that the aggravated felony need not be charged in the indictment). Because the *Apprendi* opinion may have expressed some ambivalence about *Almendarez-Torres*, see *Apprendi*, 530 U.S. at 489 ("it is arguable that *Almendarez-Torres* was incorrectly decided"), Sterling urges us to find that *Almendarez-Torres* did not survive *Apprendi* intact. We decline to so find.

Contrary to Sterling's assertions, we find that *Almendarez-Torres* was not overruled by *Apprendi* and is the law. See *United States v. Dabeit*, 231 F.3d 979, 984 (5th Cir. 2000) (finding that *Apprendi* did not overrule *Almendarez-Torres*); *United States v. Gatewoo*d, 230 F.3d 186, 192 (6th Cir. 2000) (finding that despite *Apprendi*, *Almendarez-Torres* remains the law). Therefore, in keeping with the prior conviction exception in the *Apprendi* rule, the district court appropriately used Sterling's prior convictions to enhance his sentence under the Armed Career Criminal statute, 18 U.S.C. § 924(e).

Accordingly, Sterling's conviction and sentence are

*AFFIRMED.*[2]

---

[2]If the brief of the defendant on appeal may be construed to contest the proof of the convictions qualifying for the sentencing provisions necessary for sentencing under 18 U.S.C. § 924(e), we note that the transcript of the sentencing hearing shows that two of the necessary offenses were admitted by the defendant, and a third shows that the opinion of the state judge indicates that Sterling entered a plea of guilty to charges of breaking and entering a dwelling and grand larceny. A.131; A.134. The record on appeal showing nothing to dispute these convictions, we affirm the holding of the district court that they were proven by a preponderance of the evidence. While the district court correctly found the convictions proven by a preponderance of the evidence, it stated that if called upon, it would have found them proven by clear and convincing evidence or even beyond a reasonable doubt based upon documentation. A.139.