UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
           *Plaintiff-Appellee,*

v.                                        No. 01-4207

GIDEON X. MELVIN,
           *Defendant-Appellant.*

Appeal from the United States District Court
for the Eastern District of North Carolina, at Wilmington.
James C. Fox, Senior District Judge.
(CR-00-110)

Argued: April 5, 2002

Decided: May 15, 2002

Before GREGORY, Circuit Judge,
HAMILTON, Senior Circuit Judge, and
Gerald Bruce LEE, United States District Judge for the
Eastern District of Virginia, sitting by designation.

Affirmed in part, vacated in part, and remanded with instructions by
unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Stephen Clayton Gordon, Assistant Federal Public
Defender, Raleigh, North Carolina, for Appellant. Michael Gordon
James, Assistant United States Attorney, Raleigh, North Carolina, for
Appellee. **ON BRIEF:** Thomas F. McNamara, Federal Public

Defender, Raleigh, North Carolina, for Appellant. John Stuart Bruce, United States Attorney, Anne M. Hayes, Assistant United States Attorney, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Gideon Melvin (Melvin) appeals his conviction and sentence for being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). For the reasons stated below, we affirm Melvin's conviction, vacate his sentence, and remand the case to the district court with instructions to reconsider Melvin's motion for a downward departure.

I

At approximately 1:30 a.m. on December 25, 1999, Joseph Devon Hill (Hill) and Emma Renee Wright (Wright) were walking on Castle Street in Wilmington, North Carolina on their way to Wright's residence. A few hours earlier, Hill had asked Wright to marry him. Hill and Wright turned right at the intersection of Castle and Seventh Streets. The area was well-lit by both street and porch lights.

As Hill and Wright turned the corner, they saw Melvin, who was dressed in a light-gray pullover and black jeans, urinating against a brick building. Upon seeing Melvin urinating, Hill remarked to Wright, "That's sad." (J.A. 109). As Hill and Wright continued walking, Melvin called out to Hill and told Hill that he wanted to "show [him] something." *Id.* Melvin then produced a black revolver as he approached Hill and Wright. Melvin pressed the revolver against the left side of Hill's neck and demanded Hill's money. When Hill told Melvin that he did not have any money, Melvin searched Hill's person and threatened to shoot him. After searching Hill, Melvin got into

the front passenger seat of a white Chevrolet Caprice and the car sped off. Hill observed that the white Chevrolet Caprice was occupied by four males. During the attempted robbery, Hill did not detect the smell of alcohol on Melvin's breath, but Melvin was not breathing heavily during the encounter.[1]

Meanwhile, Wilmington Police Officer Charles Niforos (Officer Niforos) was dispatched in his marked patrol car to the area of Seventh and Queen Streets in reference to a report of a stolen license plate. As Officer Niforos was traveling northbound on Seventh Street, he met a white Chevrolet Caprice, which was moving at a high rate of speed. As the white Chevrolet Caprice approached Officer Niforos, he noticed that the car contained multiple black males.

When Hill and Wright saw Officer Niforos' patrol car, they stopped him and provided him with a general description of the man who attempted to rob Hill, the weapon used in the attempted robbery, and the get-away car. As Hill spoke to Officer Niforos, Hill and Wright saw the white Chevrolet Caprice that was used as the get-away car approaching them, which made a u-turn and sped away. Hill told Officer Niforos that the car was connected to the attempted robbery. Officer Niforos then pursued the fleeing car.

The white Chevrolet Caprice went southbound on Seventh Street and across Dawson Street, where Officer Niforos lost sight of the car. Officer Niforos continued searching for the car along Seventh Street. Wilmington Police Officer Jason Commer (Officer Commer), who was also on patrol, joined Officer Niforos in the search for the white Chevrolet Caprice.

A short time later, the officers drove to the Houston Moore housing area. In the Houston Moore housing area, Officer Niforos spotted the white Chevrolet Caprice.

The white Chevrolet Caprice was parked with the engine running and had three black male occupants. Officer Niforos activated his

---

[1]Wright did not stay with Hill during the entire attempted robbery, but continued walking on Seventh Street. She did, however, look back as she walked away.

patrol car's blue lights. In response, the white Chevrolet Caprice sped off. During the ensuing chase, Officer Niforos remained focused on the driver and neither passenger obstructed Officer Niforos' view of the driver. The chase ended in a well-lit cul-de-sac near 15th Street. Officer Niforos saw the driver's side door open and observed "a lot of movement coming from the driver of the vehicle." (J.A. 170). Officer Niforos saw a dark object leave the car from the driver's side door area and, about the same time, the driver, later identified as Melvin, fled. Officer Niforos then pursued Melvin on foot.

Approximately thirty seconds after Officer Niforos pursued Melvin, Wilmington Police Officers Locklear and Woods arrived. Officer Commer instructed them to assist Officer Niforos. Officer Commer radioed for additional back-up and stayed behind with the white Chevrolet Caprice and the two remaining occupants. The two occupants, later identified as Meaghan Omar Canty (Canty) and Thessaur Dereef (Dereef), attempted to flee. Officer Commer drew his service revolver and ordered Canty and Dereef to remain inside the car. Dereef was wearing a beige leather jacket, a white sweatshirt, and brown pants at the time of his detention.

Officer Niforos pursued Melvin through a wooded area, through a drainage system area, into a clear landing, and eventually onto 16th Street. During the chase, Officer Niforos was joined by Officers Locklear and Woods. Eventually, Officer Niforos apprehended Melvin. At the time Melvin was apprehended, he was breathing heavily, and Officer Niforos detected a strong odor of alcohol on Melvin's breath. After Melvin was apprehended, arrested, and turned over to Wilmington Police Sergeant Clemmons, Officer Niforos backtracked in order to locate any evidence discarded by Melvin. Eventually, Officer Niforos made his way back to the cul-de-sac where a .38 caliber revolver was recovered on the ground near the back of the driver's side of the white Chevrolet Caprice.

A short time later, Hill was picked up at his home by a police officer. Once Hill was inside the police car, the officer said, "We got somebody. We want to see if this is the person who robbed you." (J.A. 117). Hill arrived at 16th Street and saw Melvin seated on a curb under a street light with his hands handcuffed behind his back. According to Hill, Melvin was wearing the same clothing that he had

worn during the attempted robbery. Hill saw Melvin's face, and without suggestion or prompting by the police officers stated, "That's him right there." (J.A. 118).[2] During the "show-up," the police officers did not ask Hill to identify the revolver recovered in the cul-de-sac as the one used in the attempted robbery, but Hill made that precise identification at trial.

On September 8, 2000, a federal grand jury sitting in the Eastern District of North Carolina indicted Melvin on one count of being a felon in possession of a firearm. 18 U.S.C. § 922(g)(1). Melvin pleaded not guilty, and, prior to trial, he moved to suppress certain identification evidence. The district court denied Melvin's motion to suppress and the case proceeded to trial. On November 15, 2000, the jury returned a guilty verdict. On January 5, 2001, the district court denied Melvin's motion for a new trial. On March 5, 2001, the district court sentenced Melvin to 262 months' imprisonment. On March 8, 2001, Melvin filed a timely notice of appeal.

## II

Melvin challenges the district court's decision to allow Hill to testify concerning his identifications of Melvin, which occurred: (1) shortly after the attempted robbery; (2) at the later photographic lineup; and (3) at trial. According to Melvin, the unduly suggestive setting in which Hill first identified Melvin as the man who attempted to rob him (Hill) created a strong likelihood that Hill incorrectly identified Melvin, not only at the scene of the first identification, but also at the later photographic lineup and at trial.

In addressing Melvin's claim, Supreme Court case law instructs us to conduct two separate inquiries. First, we ask whether the identification procedure leading to Hill's first identification of Melvin was impermissibly suggestive. *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977). Second, we ask whether Hill's first identification of Melvin

---

[2]Six months after the attempted robbery, Hill went to the New Hanover County Sheriff's Office to view a photographic lineup. He identified Melvin as the man who attempted to rob him from an array of six photographs, as did Wright on September 7, 2000 from a photographic lineup at the United States Attorney's Office

was reliable under the totality of the circumstances. *Id.* Because even an unduly suggestive identification procedure may, if the identification is reliable, satisfy the dictates of due process, we may proceed to examine the reliability of the identification without first examining the suggestiveness of the identification procedure. *Holdren v. Legursky*, 16 F.3d 57, 61-62 (4th Cir. 1994). In evaluating the reliability of Hill's first identification of Melvin, we must consider: (1) Hill's opportunity to view Melvin at the time of the attempted robbery; (2) Hill's degree of attentiveness at the time of the attempted robbery; (3) the accuracy of Hill's description of Melvin; (4) Hill's level of certainty when he identified Melvin as the individual who attempted to rob him; and (5) the length of time between the attempted robbery and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199 (1972).

Assuming, *arguendo*, that the identification procedure leading to Hill's first identification of Melvin was impermissibly suggestive, Melvin is entitled to no relief because application of the *Neil* factors leads to the inescapable conclusion that Hill's first identification of Melvin was reliable. Hill had ample opportunity to view Melvin during the commission of the attempted robbery. The area was well-lit by both porch and street lights and nothing obstructed Hill's view of Melvin. Because he was the victim of a serious crime, rather than a mere casual observer of such crime, Hill understandably paid close attention to Melvin. In addition, the description of Melvin that Hill provided to Officer Niforos after the attempted robbery was reasonably accurate. Hill provided a general description of Melvin, the weapon used in the attempted robbery, and the get-away car. After the white Chevrolet Caprice that was used as the get-away car returned to the scene, made a u-turn, and sped away, Hill told Officer Niforos that the car was connected to the attempted robbery. When Officer Niforos encountered the white Chevrolet Caprice in the cul-de-sac, Melvin was seen fleeing from the car. Finally, a short time after the attempted robbery, Hill, without provocation, positively identified Melvin as the man who attempted to rob him. Under these circumstances, we must conclude that Hill's first identification of Melvin was reliable.

III

Melvin argues that there is insufficient evidence in the record to support his conviction for being a felon in possession of a firearm.

We review a jury verdict for sufficiency of the evidence by determining whether there is substantial evidence, when viewed in the light most favorable to the government, to support the verdict. *Glasser v. United States*, 315 U.S. 60, 80 (1942). In determining whether the evidence in the record is substantial, we examine whether there is evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt. *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996) (*en banc*). We must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from the facts proven to those sought to be established. *United States v. Tresvant*, 677 F.2d 1018, 1021 (4th Cir. 1982).

To prove a violation of § 922(g)(1), the government must prove the following elements beyond a reasonable doubt: (1) that the defendant previously had been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) that the defendant knowingly possessed the firearm; and (3) the possession was in or affecting commerce, because the firearm had traveled in interstate or foreign commerce at some point in its existence. *United States v. Langley*, 62 F.3d 602, 606 (4th Cir. 1995) (*en banc*). At trial, the parties stipulated that the first and third elements were satisfied; thus, the only question for the jury (and for this court on appeal) was whether Melvin knowingly possessed the revolver recovered in the cul-de-sac.

The gist of Melvin's sufficiency argument is that certain inconsistencies in the trial record render the evidence insufficient. Melvin argues that, because Hill testified that Melvin got into the front passenger seat of the white Chevrolet Caprice after the attempted robbery, but was later arrested as the driver of the car, Melvin was misidentified as the possessor of the revolver during the attempted robbery. In making this argument, Melvin points out that, at the time of the attempted robbery, Hill indicated that there were three other individuals in the white Chevrolet Caprice other than Melvin, but, at the time Melvin was apprehended, only two other individuals were in the car. Melvin's argument overlooks the fact that Officer Niforos lost sight of the white Chevrolet Caprice for a short period of time. It is obvious that the jury concluded that, before the time Officer Niforos encountered Melvin at the Houston Moore housing area, one of the occupants left the white Chevrolet Caprice (presumably because the

departing occupant wanted no part in Melvin's criminal conduct) and Melvin had assumed the responsibility of driving the car.

Melvin also argues that, because Hill did not smell alcohol on Melvin's breath during the attempted robbery, but Officer Niforos did smell alcohol on Melvin's breath at the time of his arrest, Melvin was misidentified as the possessor of the revolver during the attempted robbery. However, it was entirely reasonable for the jury to conclude, on the one hand, that Hill did not smell alcohol on Melvin's breath during the attempted robbery because Melvin was not breathing heavily and, on the other hand, that Officer Niforos did detect alcohol on Melvin's breath when Melvin was apprehended because Melvin was breathing heavily after the long chase on foot.

In our view, the evidence in the record is more than sufficient to support the jury's verdict. At trial, Hill testified that Melvin was the person who attempted to rob him while armed with a black revolver. The area where Melvin attempted to rob Hill was well-lit. Hill and Wright saw Melvin's face prior to the attempted robbery. Hill identified the white Chevrolet Caprice as the get-away car in which the individual who attempted to rob him fled. This same white Chevrolet Caprice was the car Officer Niforos saw on Seventh Street and the one he saw speed away from him and Officer Commer at the Houston Moore housing area. At the cul-de-sac, Officer Niforos saw a dark object leave the car from the driver's side door area and, about the same time, the driver, later identified as Melvin, fled. The dark object was recovered and was identified by Hill at trial as the revolver used in the attempted robbery of him. In light of this evidence, we must conclude that there is substantial evidence in the record to support the jury's finding that Melvin knowingly possessed the revolver recovered in the cul-de-sac.

IV

Melvin argues that the district court abused its discretion in denying his motion for a new trial. In support of his argument, Melvin alleges that a new trial was warranted based on newly discovered evidence that Dereef possessed the firearm during the attempted robbery of Hill. According to Melvin, after the trial, Dereef contacted Mel-

vin's counsel and claimed ownership and sole possession of the revolver recovered in the cul-de-sac.

The district court's decision to deny Melvin's motion for a new trial is reviewed for an abuse of discretion. *United States v. Rhynes*, 206 F.3d 349, 360 (4th Cir. 1999) (*en banc*). A motion for a new trial based on newly discovered evidence should be granted only if: (1) the evidence relied on is, "in fact, newly discovered"; (2) there are facts "alleged from which the court may infer due diligence on the part of the movant"; (3) "the evidence relied upon [is] not merely cumulative or impeaching"; (4) "the evidence [is] material to the issues involved"; and (5) the evidence is of such a nature that it would "probably result in [an] acquittal at a new trial." *United States v. Chavis*, 880 F.2d 788, 793 (4th Cir. 1989). We noted in *Chavis* that, unless the answer to each of these inquiries is in the affirmative, a new trial is not warranted. *Id.*

The district court did not abuse its discretion in denying Melvin's motion for a new trial because, even assuming, *arguendo*, that Melvin can satisfy the third and fourth prongs of the *Chavis* test, he cannot meet the first, second, and fifth prongs. With regard to the first and second prongs, Melvin did not call Dereef as a witness, despite seeking and securing the issuance of a writ of habeas corpus *ad testificandum* for Dereef's appearance at trial. Although Melvin called Canty as a witness at trial, he did not call Dereef. Where counsel fails to call a witness who is available at trial, the testimony from this witness cannot be considered newly discovered evidence. *United States v. Beasley*, 582 F.2d 337, 339 (5th Cir. 1978) (The decision not to call a witness, whether wise or not, is "a deliberate and strategic one," and, thus, "[t]he defendant is not entitled to a new trial so that he may employ a different strategy."). By the same token, it cannot be said that Melvin exercised due diligence in discovering the evidence as he failed to call Dereef as a witness. To hold otherwise would encourage defendants to call some witnesses at trial but not others in hopes that the testimony of the witnesses not called at trial can be used later to support new trial motions.

With regard to the fifth prong of the *Chavis* test, Hill and Wright each testified that Melvin attempted to rob Hill at gunpoint. Hill also testified that the revolver recovered in the cul-de-sac was the same

revolver Melvin possessed during the attempted robbery. Critical portions of Hill's testimony were corroborated by Officer Niforos, and his testimony clearly suggested that Melvin possessed the revolver recovered in the cul-de-sac. In light of this evidence, we must conclude that Dereef's testimony probably would not result in an acquittal at a new trial.

V

Since the district court found that Melvin had three prior qualifying felony convictions, Melvin was sentenced as an armed career criminal, U.S. Sentencing Guidelines Manual (USSG) § 4B1.4. Because Melvin used or possessed the revolver in this case in connection with a crime of violence (the attempted robbery of Hill), Melvin was assigned an offense level of thirty-four pursuant to USSG § 4B1.4(b)(3)(A). Had Melvin not possessed the revolver in connection with the attempted robbery of Hill, Melvin's offense level would have been thirty-three pursuant to USSG § 4B1.4(b)(3)(B). Melvin contends that, under the rule announced in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), he is entitled to be resentenced at offense level thirty-three because the necessary facts needed to apply USSG § 4B1.4(b)(3)(A) were neither charged in the indictment nor submitted to the jury. This argument is without merit.

In *United States v. Kinter*, 235 F.3d 192 (4th Cir. 2000), *cert. denied*, 532 U.S. 937 (2001), we held that, where a sentencing enhancement pursuant to the Sentencing Guidelines did not extend a defendant's sentence beyond the maximum prescribed by the United States Code, the relevant facts supporting the enhancement did not have to be submitted to the jury or proved beyond a reasonable doubt. *Id.* at 200-02. In this case, Melvin was sentenced to 262 months' imprisonment, well within § 924(e)(1)'s maximum sentence of life.[3]

---

[3] A conviction under § 922(g)(1) carries a maximum sentence of ten years, 18 U.S.C. § 924(a)(2), but if the defendant has three prior qualifying felony convictions, the Armed Career Criminal Act, *id.* § 924(e)(1), comes into play and provides a minimum sentence of fifteen years and a maximum sentence of life.

Therefore, the district court's application of USSG § 4B1.4(b)(3)(A) did not run afoul of *Apprendi*.[4]

In a related argument, Melvin argues that, under *Apprendi*, the determination of whether he had three prior qualifying felony convictions was a factual matter that should have been submitted to the jury and proved beyond a reasonable doubt. The essence of this argument is that *Apprendi* overruled the holding of *Almendarez-Torres v. United States*, 523 U.S. 224, 235 (1998), that prior felony convictions which trigger enhanced sentences are sentencing enhancements rather than elements of the offense. Unfortunately for Melvin, we recently rejected this argument in *United States v. Sterling*, 283 F.3d 216 (4th Cir. 2002), where we held that the holding of *Almendarez-Torres* was not overruled by *Apprendi* and, consequently, *Apprendi* did not affect enhanced sentences under § 924(e)(1). *Sterling*, 283 F.3d at 220.

VI

Melvin also challenges the district court's denial of his motion for a downward departure. Melvin argues that the district court erroneously believed that it lacked discretion to depart downward from his criminal history category (VI) given his classification as an armed career criminal.

We lack authority to review a decision of the district court not to depart from the applicable guideline range when the decision rests upon a determination that a departure is not warranted. *United States v. Brock*, 108 F.3d 31, 33 (4th Cir. 1997). However, if the district court decides not to depart because it believes it lacks legal authority to depart, we may review that decision. *Id.* In such event, our review is *de novo*. *United States v. Hall*, 977 F.2d 861, 863 (4th Cir. 1992).

In our opinion, it is unclear whether the district court recognized it had the authority to depart given Melvin's classification as an armed career criminal, even if his criminal history category significantly overrepresented the seriousness of his criminal history. *See*

---

[4]We have reviewed Melvin's argument that the district court's application of USSG § 4B1.4(b)(3)(A) violates the principle of federalism and find it to be without merit.

USSG § 4A1.3, p.s; *see also United States v. Pearce*, 191 F.3d 488, 497 (4th Cir. 1999) (noting that a sentencing court may depart where the defendant's career offender status overstates the seriousness of the defendant's past conduct and that such departures are reserved for the truly unusual case); *United States v. Adkins*, 937 F.2d 947, 952 (4th Cir. 1991) (same). On the one hand, the district court seemed to recognize its authority to depart, even though Melvin was classified as an armed career criminal, if Melvin's criminal history significantly overstated the seriousness of his past criminal conduct:

> [T]he court can find that the criminal history category overemphasizes or overstates the criminal history of a particular defendant. And I'm thinking about finding that as far as the armed career status. To the same effect, I'm trying to see what sentence I could impose if I did that.

(J.A. 350). On the other hand, the district court seemed to suggest that it did not have the authority to depart since Melvin was classified as an armed career criminal, even if it believed Melvin's criminal history significantly overstated the seriousness of the his past criminal conduct:

> [I]t seems to me that if the court has the authority to depart downwardly on a criminal history category by saying that the criminal history category overemphasizes or overstates the actual criminal history of the individual, that the court should have the same discretion with regard to the armed career criminal status. I don't [know] of any case law to that effect. So, of course, you would be in the position of defending the court's judgment.

*Id.* The district court's apparent confusion concerning its authority to depart downward given Melvin's armed career criminal status is further illustrated by the district court's later comment that it "really [did not] know . . . the answer" to the question of whether it had the authority to depart downward given Melvin's armed career criminal status. (J.A. 351). Ultimately, the district court sentenced Melvin to 262 months' imprisonment on the basis that the Sentencing Guidelines mandated the sentence.

In our view, the district court's ruling is ambiguous as to the basis for its refusal to depart downward from Melvin's criminal history category. Under these circumstances, we believe a remand to the district court is appropriate to allow the district court to reconsider Melvin's motion for a downward departure.[5]

## VII

For the reasons stated herein, we affirm Melvin's § 922(g)(1) conviction, vacate his sentence, and remand his case to the district court with instructions to reconsider his motion for a downward departure.[6]

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED WITH INSTRUCTIONS*

---

[5]We express no opinion on the merits of Melvin's motion for a downward departure.

[6]On March 29, 2002, we granted Melvin's motion for leave to file a supplemental brief and accepted for filing his supplemental brief. We have reviewed the arguments raised in the supplemental brief and find them to be without merit.