UNPUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
        *Plaintiff-Appellee,*

v.                                              No. 01-4404

DON VINCENT SIMMONS,
        *Defendant-Appellant.*

Appeal from the United States District Court
for the District of South Carolina, at Charleston.
Patrick Michael Duffy, District Judge.
(CR-98-601)

Argued: June 6, 2002

Decided: August 16, 2002

Before MOTZ and TRAXLER, Circuit Judges, and
Claude M. HILTON, Chief United States District Judge
for the Eastern District of Virginia, sitting by designation.

Affirmed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** John Robert Haley, Assistant Federal Public Defender, Charleston, South Carolina, for Appellant. Sean Kittrell, Assistant United States Attorney, Charleston, South Carolina, for Appellee. **ON BRIEF:** J. Strom Thurmond, Jr., United States Attorney, Charleston, South Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

Don Vincent Simmons was convicted by a jury of possession of a firearm by a convicted felon, possession with intent to distribute an unspecified amount of cocaine base, use of a firearm in relation to a drug trafficking crime, and aiding and abetting the making of a false statement in connection with the purchase of a firearm. Simmons' primary contention on appeal is that the district court erroneously denied his motion to suppress the firearm and other evidence seized pursuant to a search warrant that Simmons argues was invalid. We affirm.

### I.

The police department in Charleston, South Carolina, was informed that an apartment building at 67 Nunan Street was being used to sell drugs. The police used an undercover confidential informant to make a drug purchase inside the apartment building on April 2, 1997. During the undercover buy, the confidential informant saw firearms inside the building and heard people there indicate they were prepared to use violence against officers.

After the buy, police continued surveillance on the building and observed activity that was consistent with drug trafficking. On April 22, a second undercover buy was made.

On April 24, police obtained a search warrant for 67B Nunan Street. It was based on the following affidavit:

> [D]uring the past seventy-two hours, a Confidential Informant (CI) for Charleston Police Department has been inside the residence at 67B Nunan Street which is in the city and County of Charleston S.C. and purchased a quantity of a white rock like substance weighing approximately .2 grams

and having a street value of $20.00. The white rock like sub-
stance was field tested positive as crack cocaine by Investi-
gator Sanders. The purchase of the crack cocaine was made
inside the residence from an unidentified black male subject.
The Confidential Informant was searched prior to and after
the transaction for illegal contraband with negative results
by Officer Landess. The Confidential Informant was
observed entering and leaving the residence by Investigators
Sanders and Durham who had a clear and unobstructed
view. Based on the above facts, there is probable cause to
believe that there is crack cocaine stored inside the resi-
dence at 67 Nunan Street.

The search warrant, dated April 24, 1997, was issued by a state
magistrate judge and was valid for ten days from the date of issuance.
Before executing the search warrant, officers continued to observe
activity at the apartment building that appeared to be consistent with
drug trafficking. The officers also decided that there was a high risk
of danger because of the possibility that firearms would be present,
and waited to serve the warrant until the SWAT team could assist
them. The search warrant was executed on May 2, eight days after it
was issued. Just before executing the search warrant, the officers
again watched the apartment building and believed that the amount of
people coming and going was consistent with a crack house opera-
tion.

The search warrant described the premises to be searched as fol-
lows:

> The residence known as 67-B Nunan Street is located in the
> city and county of Charleston S.C. The residence known as
> 67 Nunan Street is a two story wooden dwelling white in
> color with blue trim around the doors and windows. . . .
> Apartment B will be located on the second floor of the resi-
> dence. . . .

Actually, Apartment B was on the bottom floor. There were 4 units
— apartments A and B on the bottom and apartments C and D on the
top. Apartments C and D have a common landing. Only apartment B
was rented at the time of the raid. Apartments C and D upstairs had

no legal occupants at the time. SWAT teams entered both of the upstairs units during the raid despite the fact that apartment B, the only apartment specified in the warrant, was downstairs.

On the ground, Officer Charap was watching the upstairs windows of apartment D and saw an arm with a gold bracelet holding a gun and moving as if to target officers below. Charap fired a round toward the person with the gun. Almost immediately, SWAT team members saw defendant Don Simmons running out of apartment D and arrested him as he was going down the stairs. Officers later found a 9 mm pistol in a bathroom sink in apartment D. In the other upstairs apartment — apartment C — officers recovered drug paraphernalia and a small amount of crack cocaine.

Evidence at trial showed that Simmons was selling crack out of the 67 Nunan Street apartment building. One of Simmons' customers was hiding in a bathroom in apartment D during the SWAT raid, saw Simmons enter the bathroom, and heard the sound of something metal hitting the sink. She had also seen Simmons with a gun earlier.

Prior to trial, Simmons moved to suppress the evidence seized by police officers during the raid. Simmons argued primarily that the probable cause supporting the warrant had become stale at the time of the search because the warrant was not executed until eight days after it was issued and twelve days after the drug purchase alleged in the supporting affidavit. The district court rejected the argument on the merits but also concluded that, in any event, Simmons had no standing to challenge the search.

Simmons was convicted of being a felon in possession of a firearm, *see* 18 U.S.C.A. § 922(g)(1) (West 2000); possession with intent to distribute an unspecified amount of crack, *see* 21 U.S.C.A. § 841(a)(1); use of a firearm in relation to a drug trafficking crime, *see* 18 U.S.C.A. § 924(c) (West 2000); and aiding and abetting the making of a false statement in connection with the purchase of a firearm, *see* 18 U.S.C.A. §§ 922(a)(6), 924(a)(2) (West 2000); 18 U.S.C.A. § 2 (West 2000).

## II.

Simmons contends that the district court erroneously failed to suppress the evidence seized in the search of the 67 Nunan Street apart-

ment building. He makes essentially the same argument he made in district court — that the warrant was invalid because the probable cause on which it was based had become stale at the time of the search. We agree with the district court that Simmons lacked standing to challenge the search.

The Fourth Amendment "generally prohibits the warrantless entry of a person's home, whether to make an arrest or to search for specific objects." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990); *see Katz v. United States*, 389 U.S. 347, 357 (1967) (explaining that searches conducted without a warrant and in the absence of an exception to the warrant requirement "are per se unreasonable"). The Fourth Amendment "protects persons against unreasonable searches of 'their persons [and] houses' and thus indicates that the Fourth Amendment is a personal right that must be invoked by an individual." *Minnesota v. Carter*, 525 U.S. 83, 88 (1998). The Supreme Court has instructed that the "capacity to claim the protection of the Fourth Amendment depends . . . upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Therefore, "searches and seizures conducted in the absence of . . . a [valid] warrant are impermissible only if the officer encroaches upon a legitimate expectation of privacy." *Doe v. Broderick*, 225 F.3d 440, 450 (4th Cir. 2000); *see California v. Greenwood*, 486 U.S. 35, 39 (1988). Accordingly, a defendant desiring to suppress evidence on the basis of an unreasonable search bears the burden of "show[ing] that he has a legitimate expectation of privacy in the area searched." *United States v. Kitchens*, 114 F.3d 29, 31 (4th Cir. 1997). There is a legitimate expectation of privacy "when the individual seeking Fourth Amendment protection maintains a 'subjective expectation of privacy' in the area searched that 'society [is] willing to recognize . . . as reasonable.'" *Doe*, 225 F.3d at 450 (quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)).

In appropriate circumstances, an overnight guest may maintain a legitimate privacy interest in another person's residence:

> To hold that an overnight guest has a legitimate expectation of privacy in his host's home merely recognizes the everyday expectations of privacy that we all share. . . .

> From the overnight guest's perspective, he seeks shelter in another's home precisely because it provides him with privacy, a place where he and his possessions will not be disturbed by anyone but his host and those his host allows inside. We are at our most vulnerable when we are asleep because we cannot monitor our own safety or the security of our belongings. It is for this reason that, although we may spend all day in public places, when we cannot sleep in our own home we seek out another private place to sleep, whether it be a hotel room, or the home of a friend.

*Minnesota v. Olson*, 495 U.S. 91, 98-99 (1990).

According to Simmons, he was staying in the upstairs apartment with the permission of his former girlfriend Leslie Bolton, who was renting the apartment at his direction. In essence, Simmons claims that he may challenge the search because he was living in the apartment with the permission of the lessor. *See id.*; *see also Carter*, 525 U.S. at 90 ("[A]n overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present with the consent of the householder may not."). The district court, however, concluded that to the extent that Simmons was living in the apartment searched by police, he was living there illegally. We review the factual determinations of the district court for clear error. *See Kitchens*, 114 F.3d at 31.

The apartment identified in the search warrant, 67B Nunan Street, was part of the four-unit apartment building located at 67 Nunan Street. Apartments A and B were located on the bottom floor, and apartments C and D were located on the upper floor. According to the lease agreement, a person named Shenita Whitfield leased the downstairs apartment B. Leslie Bolton testified that, at the urging of Simmons, she had entered into the lease agreement under the name Shenita Whitfield. Leslie Bolton indicated that Simmons instructed her to rent the same apartment that her mother, Emily Bolton, had previously rented at 67 Nunan Street, and Bolton recalled that it was an upstairs apartment. Simmons gave the money to Bolton to pay the rent.

Simmons contends that the apartment number listed on the lease agreement, 67B Nunan Street, was a typo and that the landlord had

intended to rent 67D Nunan Street — one of the upstairs units that the police entered. To support his argument that Bolton actually rented apartment D, Simmons points to the fact that the government acknowledged that apartment D was the only apartment that appeared to be occupied at the time of the raid and that Bolton remembered renting an upstairs apartment.

The district court rejected the theory that the lease contained a typo. The conclusion of the district court that apartment B, not apartment D, had indeed been rented by Bolton was consistent with records maintained by South Carolina Electric & Gas Company (SCE&G) showing that only apartment B on the bottom floor was supplied with electrical power. SCE&G listed Emily Bolton, Leslie's mother, as its customer. Also, during the suppression hearing, counsel for Simmons acknowledged that Simmons "may [have] be[en] ripping off SCE&G for electricity." J.A. 206. Ultimately, the district court agreed with the government's contention that apartment B was originally rented by Emily Bolton and later by her daughter Leslie under the name Shenita Whitfield. The court agreed that "at some point, Mr. Simmons move[d] upstairs . . . to sell [crack] . . . in a more secure location." J.A. 208. The court observed that "obviously the [upstairs] apartments were not being rented. Whenever they ceased being rented, [Simmons] just expanded into it for illegal activity." J.A. 212. The district court concluded that Simmons' girlfriend had not rented either of the upstairs apartments and, therefore, that Simmons was occupying those premises illegally. Because this factual determination was not clearly erroneous, we affirm the district court's ruling that Simmons did not have a sufficiently legitimate expectation of privacy in the premises to contest the search of the two upstairs apartments or exclude what was recovered in the search.

III.

Simmons also argues that the district court improperly admitted evidence regarding prior convictions for distribution of crack cocaine, prior drug purchases from Simmons in 1991, and previous occasions on which Simmons directed Leslie Bolton to purchase guns on his behalf. Simmons contends that the evidence failed to meet the requirements for admissibility under Rule 404(b) of the Federal Rules of Evidence. Under Rule 404(b), evidence of other bad acts may be

admitted to prove "a material issue other than character." *Huddleston v. United States*, 485 U.S. 681, 686 (1988). Such evidence is admissible to demonstrate "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Fed. R. Evid. 404(b). However, such evidence must also be necessary and reliable to be admissible. *See United States v. Mark*, 943 F.2d 444, 447 (4th Cir. 1991).

In our view, the district court properly admitted this evidence. This circuit "subscribe[s] to the view of [Rule 404(b)] as an inclusionary rule which admits all evidence of other crimes relevant to an issue in a trial except that which tends to prove only criminal disposition." *Id.* (internal quotation marks omitted). This evidence was relevant to the issues at trial and otherwise met the requirements for admission. However, we need not reach the merits of Simmons' argument because any error in the admission of this evidence was harmless. *See* Fed. R. Crim. P. 52(a). We will find an evidentiary ruling harmless if we are able to conclude "without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765 (1946); *see United States v. Brooks*, 111 F.3d 365, 371 (4th Cir. 1997). We conclude that, even if the district court admitted the Rule 404(b) evidence in error, the error did not substantially affect Simmons' convictions for possession of a firearm by a convicted felon, possession with intent to distribute crack cocaine, use of a firearm in relation to a drug trafficking crime, and aiding and abetting the making of a false statement in connection with the purchase of a firearm. The government presented testimony from Abram and Norma Reese that they had been buying crack cocaine from Simmons for approximately one month and that on May 2, 1997, the day police raided 67 Nunan Street and arrested Simmons, they had purchased crack from Simmons. Moreover, the Reeses testified that on May 2, they saw Simmons in possession of a gun. Norma Reese was hiding in a bathroom in upstairs apartment D when the police entered. She saw Simmons enter the bathroom, and then heard a metal object fall into the sink. Officers later recovered a handgun from the bathroom in apartment D. Also, during the execution of the search warrant, officers watching on the ground outside of the apartment building saw an individual with dark clothing pointing a gun toward the street; the individual was wearing a gold bracelet. Within minutes, Simmons was arrested as he

attempted to run from apartment D. He was wearing dark clothing and a gold bracelet. Simmons had in his possession a sum of money that was divided in a manner that was consistent with the way drug dealers divide their money. Furthermore, Leslie Bolton testified that, at Simmons' request, she purchased the gun seized from 67 Nunan Street by police officers on May 2. She used the name Shenita Whitfield to purchase the firearm for Simmons; pawn shop records introduced by the government confirmed her testimony.

In view of the overwhelming evidence presented by the government, we conclude that even if the evidence of Simmons' prior bad acts was improperly admitted, the error was harmless.

IV.

Finally, Simmons contends that his sentence is unconstitutional under the Supreme Court's decision in *Apprendi v. New Jersey*, 530 U.S. 466 (2000), because the district court concluded, based on several prior convictions that were not alleged in the indictment or presented to the jury, that Simmons was subject to an enhanced sentence as an armed career criminal, *see* 18 U.S.C.A. § 924(e) (West 2000); U.S. Sentencing Guidelines Manual § 4B1.4 (2000), and a career offender, *see* U.S.S.G. § 4B1.1. This argument is foreclosed by our decision in *United States v. Sterling*, 283 F.3d 216, 219-20 (4th Cir.), *cert. denied*, 122 S. Ct. 2606 (2002), in which we concluded that the prior convictions used to enhance a sentence under § 924(e) were specifically excluded from the holding of *Apprendi*. We see no reason to conclude that *Apprendi* would apply to prior convictions used to sentence a defendant as a career offender when it does not apply to those used to enhance a sentence under § 924(e). *See United States v. Collins*, 272 F.3d 984, 987 (7th Cir. 2001), *cert. denied*, 122 S. Ct. 1938 (2002). Accordingly, we reject Simmons' *Apprendi* argument.

*AFFIRMED*