**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Tony Lee THOMPSON, Defendant–
Appellant.**

No. 04–4678.

United States Court of Appeals,
Fourth Circuit.

Argued May 27, 2005.

Decided Sept. 6, 2005.

---

**ARGUED:** Thomas Norman Cochran, Assistant Federal Public Defender, Office of the Federal Public Defender, Greensboro, North Carolina, for Appellant. Lawrence Patrick Auld, Office of the United States Attorney, Greensboro, North Carolina, for Appellee. **ON BRIEF:** Anna Mills Wagoner, United States Attorney, Lisa B. Boggs, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.

Before WILKINS, Chief Judge, and WIDENER and WILKINSON, Circuit Judges.

Affirmed by published opinion. Judge WILKINSON wrote the majority opinion, in which Judge WIDENER joined. Chief Judge WILKINS wrote a dissenting opinion.

## OPINION

WILKINSON, Circuit Judge.

Tony Lee Thompson was indicted as a felon in possession of firearms under 18 U.S.C. §§ 922(g)(1), 924(e) (2000 & Supp. II). He pleaded guilty. When a defendant has at least three prior convictions for "violent felon[ies]" that were "committed on occasions different from one another," § 924(e)(1), the Armed Career Criminal Act ("ACCA"), imposes a minimum sentence of fifteen years. The district court found these statutory conditions satisfied and sentenced Thompson to that minimum sentence.

On appeal, Thompson disputes the applicability of ACCA to his case. He claims that the statutory predicates—that his prior convictions were violent felonies committed on separate occasions—were facts improperly found by the judge in violation of his Sixth Amendment rights. Because we conclude that the statutory predicates have been demonstrated as a matter of law, there remain no disputed questions of fact about Thompson's prior convictions. We therefore affirm.

### I.

Tony Lee Thompson emerged from a residence—not his own—on November 16, 2003, in High Point, North Carolina. He was carrying stolen items. The police department, having been alerted by a call complaining of a suspicious person, dispatched an officer who apprehended Thompson. The officer found him with a Jennings Bryco 9mm pistol and a Colt .38 caliber revolver. Since both firearms had moved in interstate commerce, Thompson was indicted as a felon-in-possession under § 922(g)(1).

Thompson's criminal history supplied the predicates for an enhanced sentence under § 924(e).[1] Thompson does not dispute that he has been convicted of felonies. The Presentence Investigation Report ("PSR")—to which he raised no objection—details the extent of his criminal record. From the age of 16, Thompson (now 25) has been convicted of a string of crimes ranging from misdemeanor shoplifting and drug possession to a number of felonies.

Particularly relevant among the more than twenty convictions described in the PSR are several for "felony breaking and entering" under North Carolina law. The PSR records that Thompson pled guilty to felony breaking and entering of a residence in Trinity, North Carolina, on July 19, 2001; of another residence in Trinity on July 23, 2001; of a residence in Asheboro, North Carolina, on July 25, 2001; of a residence in Lexington, North Carolina, on October 1, 2001; of another residence in Lexington on June 18, 2002; and of yet two further residences in Lexington on November 7, 2002.

On the basis of these prior convictions and upon accepting the plea agreement Thompson reached with the government, the district court found the enhancement of § 924(e)—a mandatory minimum sentence of 15 years—to be applicable. The court thus sentenced Thompson to fifteen years imprisonment, five years of supervised release, and a $100 special assessment.

Thompson now appeals, arguing that his sentence was unconstitutionally imposed as a matter of law. We review legal determi-

---

1. ACCA provides that anyone "who violates § 922(g) ... and has three previous convictions ... for a violent felony or a serious drug offense, or both, committed on occasions dif-ferent from one another ... shall be fined under this title and imprisoned not less than fifteen years ...." § 924(e)(1).

nations of the district court de novo. *United States v. Blake,* 81 F.3d 498, 503 (4th Cir.1996).

## II.

Thompson believes that the Supreme Court's recent Sixth Amendment rulings prohibit sentencing him under ACCA unless a jury finds (or he admits) the facts required by the statute.[2] Two such facts—that three prior convictions were "violent felonies" and that they were "committed on occasions different from one another"—are predicates for ACCA enhancement. Thompson argues that since these facts were neither admitted by him nor found by a jury, they cannot justify the enhanced sentence.

Evaluating Thompson's claims requires understanding the limitations the Supreme Court has placed on the use of judicial fact-finding in the sentencing context. In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), the Supreme Court held that a sentencing regime violated the Sixth Amendment when judges found "factors" that increased a sentence beyond the maximum allowed by the jury findings alone. But by refusing to overturn its holding in *Almendarez–Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), the Court explicitly excluded from this general rule " 'the fact of a prior conviction.' " *Blakely,* 124 S.Ct. at 2536 (quoting *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)). In *United States v. Booker,* — U.S. ——, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), the Court extended *Blakely* to the U.S. Sen-

tencing Guidelines. But the Court repeated that only facts "other than a prior conviction" were subject to the jury requirements of the Sixth Amendment. *Id.* at 756.

Most recently, in *Shepard v. United States,* — U.S. ——, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005), the Court addressed what was meant by the "fact of a prior conviction." In *Shepard,* the Court considered a defendant situated much like Thompson. Shepard pleaded guilty to being a felon in possession under § 922(g)(1), and the government sought to use ACCA to enhance his sentence. But the text of the Massachusetts statute under which Shepard previously had been convicted did not clearly meet the requirement of ACCA that the conviction be a "violent felony." To demonstrate compliance with ACCA, the government offered documents like police reports to show that even if some convictions under the state statute might not be "violent felonies," Shepard's own convictions were. *Id.* at 1257–58.

The Supreme Court refused the offer. It prohibited judges from resolving a "disputed fact ... about a prior conviction," *id.* at 1262, if doing so required data—like that found in police reports—that was not inherent in that prior conviction. At the same time, however, *Shepard* explicitly affirmed that the prior conviction exception remained good law. *Id.* at 1262. To this end, the Court authorized judges to rely on a variety of conclusive court documents when determining the nature of a prior conviction. Approved sources include, for instance, the prior court's jury instructions

---

2. Thompson also challenges his sentence under the Fifth Amendment, arguing that the indictment did not allege facts sufficient to support his enhanced sentence under ACCA. As the dissent acknowledges, both of his constitutional claims are defeated if "the underlying facts justifying the 'different occasions' determination were each subsumed by the fact of Thompson's prior convictions." Dissenting Op. at 289 (quotation marks and alterations omitted). As this is precisely what we conclude in our discussion of the Sixth Amendment, there is no need to conduct a separate Fifth Amendment analysis.

or the "charging documents filed in the court of conviction." *Id.* at 1259. When there was no jury in the prior case, judges may use not only charging documents but "a bench-trial judge's formal rulings of law and findings of fact." *Id.* For prior guilty pleas, "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or [ ] some comparable judicial record of this information," are all also available for use. *Id.* at 1263.[3]

The common denominator of the approved sources is their prior validation by process comporting with the Sixth Amendment. Excluded sources, such as transcripts of testimony or police reports, are not necessarily inherent in the conviction. "[S]ubsequent evidentiary enquiries into the factual basis for the earlier conviction" are off-limits, *id.* at 1259, but "conclusive records" of the earlier conviction, *id.* at 1260, are not.

In short, the "fact of a prior conviction" remains a valid enhancement even when not found by the jury. Of course, sentencing judges may not smuggle in contraband facts—those that are reserved for juries— under the mantle of the "fact of a prior conviction." But neither may we sever the prior conviction from its essential components. For instance, an artificially narrow reading of the "fact of a prior conviction" exception might extend to only a grudging acknowledgment that a defendant once had been convicted. Such a reading would answer the question "convicted of what?" by asserting that such a question involved facts "about" the conviction which were reserved to a jury.

*Shepard* rejected this narrow approach. In describing the materials that *could* be used by judges to determine the nature of a prior conviction, it reinforced the notion that some facts are so inherent in a conviction that they need not be found by a jury. If the Court had wished to endorse the narrower view—that only the bare existence of a prior conviction was exempt from jury determination—it could have saved itself great trouble by simply stating that such questions about a conviction were reserved for a jury, regardless of whether statutes, charging documents, or prior jury instructions revealed the nature of the conviction.

A conviction cannot, therefore, be reduced to nothing more than that the defendant was at some prior time convicted of some crime. This bare fact is certainly at the nucleus of the conviction. But that nucleus also contains other operative facts, such as the statute which was violated and the date of the conviction. The Supreme Court has declined to attempt extraction of the mere fact of a prior conviction, stripped of all content. We cannot be willfully blind to that content—date, statutory violation, and the like—where it is properly established by one of the sources approved in *Shepard.* It is as much a part

---

3. Our dissenting colleague would read *Shepard* purely as a case of statutory interpretation. Dissenting Op. at 295. But as we recognized in *United States v. Washington,* 404 F.3d 834, 840–41 (4th Cir.2005), *Shepard* itself says otherwise. It did not escape the Court's notice in *Shepard* that the rule it announced might have constitutional implications. But the four-justice plurality noted that its interpretation of ACCA had followed "the rule of reading statutes to avoid serious risks of unconstitutionality." *Id.* at 1262–63. And the three dissenting justices expressed the opinion that the Sixth Amendment permits judicial consultation of records even outside those that the plurality approved. *Id.* at 1269–70. Thus, seven justices indicated that it is constitutional for a judge to find the facts inherent in a prior conviction in the judicial records of that conviction.

of the conviction as the fact that twelve jurors agreed about the defendant's guilt.

We have already had an opportunity to respect the line *Shepard* drew between data inherent in a prior conviction and those facts extraneous to it. In *United States v. Washington,* 404 F.3d 834 (4th Cir.2005), facts extraneous to the prior convictions had caused a heightened sentence. The district court had to determine whether a prior conviction had been a "crime of violence" under the Sentencing Guidelines, where the relevant test was the fact-intensive inquiry of whether the prior conviction had "involve[d] conduct that presents a serious potential risk of physical injury to another." *Id.* at 836 (quoting United States Sentencing Guidelines Manual § 4B1.2(a)(2)). The district court relied on "common experience" and "extra-indictment information," *id.* at 842, to reach that conclusion. Such sources, including discussions about the nature of the building that Washington had entered, about the kind of materials stored there, and about the likelihood of people being present or armed during the hour of the crime, *id.* at 836, necessarily provided facts not of a prior conviction but " 'about a prior conviction,' " *id.* at 839 (quoting *Shepard,* 125 S.Ct. at 1262) (emphasis in *Washington* ), 841–42. The court observed that "Washington's prior guilty plea in no way implicated the level of the building's security system, the nature of its employees and their activities, or whether they at times return to work at night." *Id.* at 842. Because such facts were extraneous to the fact of conviction, we vacated the sentence, as *Shepard* required.

The present case therefore turns on whether the facts necessary to support the enhancement inhere in the fact of conviction or are extraneous to it. If Thompson can show that his prior convictions were not inherently "violent felonies" or that the convictions themselves were not for offenses committed during separate occasions, his sentence must be vacated. But if these facts are inherent in his prior convictions, then Thompson cannot demand a jury finding because no legitimately disputed fact provides the basis for the ACCA sentence.

### III.

#### A.

■ Thompson first points to the requirement in § 924(e) that the predicate prior convictions were "violent felonies." He argues that the indictment in this case alleged only, and insufficiently for § 924(e) purposes, that he had previously been convicted "of crimes punishable by imprisonment for a term exceeding one year, that is, breaking and entering (3 counts); larceny (2 counts); and possession of burglary tools." He disputes that this description of his prior convictions meets the requirements of § 924(e). At any rate, he argues, since the indictment did not specify that the prior convictions were for "violent felonies," and since he did not admit as much in his guilty plea, the district court deprived him of the right to a jury's determination when it enhanced his sentence.

■ As we have noted above, recent Supreme Court case law emphasizes that prior convictions are facts that need not be submitted to any jury. *Shepard* affirmed this rule. The only question here is whether Thompson's prior convictions do or do not qualify as "violent felonies." It is often "a question of law whether a felony meets the statutory definition of a 'violent felony,' and such a question does not trigger the Sixth Amendment concerns addressed in *Booker*." *United States v. Moore,* 401 F.3d 1220, 1225 (10th Cir. 2005); *see also United States v. Wilson,* 406 F.3d 1074, 1076 (8th Cir.2005) (finding

a statutory offense to be a violent felony as a matter of law); *United States v. Haynes*, 961 F.2d 50, 51 (4th Cir.1992) (finding that the defendant's status as a convicted felon "involves a purely legal determination") (citation omitted).

ACCA defines the term "violent felony" in part as "any crime punishable by imprisonment for a term exceeding one year ..., that ... is burglary ...." § 924(e)(2)(B)(ii). In *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), the Supreme Court construed "burglary" in this context to be limited to what it called "generic burglary," which is "unlawful or unprivileged entry into, or remaining in, a building or structure"—but not, for instance, a car or boat—"with intent to commit a crime." *Id.* at 598–99, 110 S.Ct. 2143; *see also United States v. Bowden*, 975 F.2d 1080, 1083 (4th Cir.1992).

We have already considered the question of whether the North Carolina statute proscribing "breaking or entering buildings," *see* N.C.G.S. § 14–54, constitutes "generic burglary." In *Bowden*, this court thoroughly examined ACCA, the Supreme Court's decision in *Taylor*, and the North Carolina statute. *Bowden*, 975 F.2d at 1081–85. Using these sources, we explained why violations of the North Carolina statute "must be within *Taylor*," *id.* at 1085, and therefore are "violent felonies" for ACCA purposes. *See also United States v. Anderson*, 921 F.2d 335, 340 (1st Cir.1990) (concluding that a "North

Carolina conviction for breaking and entering clearly qualifies as a predicate offense under the *Taylor* definition" for a § 924(e) enhancement).

Since *Bowden* disposes of Thompson's challenge to the classification of a North Carolina burglary conviction as a "violent felony" under § 924(e), we necessarily conclude that the statutory requirement of three prior convictions of violent felonies has been met.[4]

### B.

■ The statute also requires, however, that the three convictions count only if the offenses were "committed on occasions different from one another." § 924(e)(1). If a series of crimes can be characterized as a single "occasion," criminal defendants stand to gain sentencing reductions by arguing that their crimes were part of a unified whole. Thompson unsurprisingly seeks to benefit from this possible construction of the word "occasion." He claims that several of his offenses were part of a single "occasion," and that he should thus not be sentenced under ACCA. He has not explained how he packages his criminal past to reduce his violent felonies to fewer than three occasions, but his counsel at oral argument promised that if Thompson is given the chance to "take the stand and argue to the jury," all will become clear.

---

4. This conclusion would remain unchanged even if Thompson had challenged the PSR— if, for example, he alleged that the PSR described some other Tony Lee Thompson. Such "subsidiary findings" are part of " 'the fact of a prior conviction' " which judges may find. *United States v. Santiago*, 268 F.3d 151, 156 (2d Cir.2001). So long as such a "subsidiary finding" does not encompass any fact extraneous to the fact of conviction, it need not be found by a jury.

Furthermore, although the indictment here referenced Thompson's prior convictions, the result would be the same if it had been less complete. *See United States v. Higgs*, 353 F.3d 281, 302 (4th Cir.2003) (indictment need not charge a prior conviction to enhance a sentence); *see also United States v. Burgin*, 388 F.3d 177, 186 (6th Cir.2004) (whether prior convictions were committed on different occasions "need not be pled in an indictment").

There is no occasion to persuade the jury, however, unless there is a disputed question of fact extraneous to Thompson's prior convictions. No such question exists here. We have explained that "occasions" are "those predicate offenses that can be isolated with a beginning and an end— ones that constitute an occurrence unto themselves." *United States v. Letterlough*, 63 F.3d 332, 335 (4th Cir.1995). We listed several factors in that case to guide district courts, such as different geographic locations and victims. *Id.* at 335–36. Letterlough himself had two prior drug sale convictions, for sales occurring less than two hours apart. *Id.* at 334. As a matter of law, we held that "each of Letterlough's drug sales was a complete and final transaction," *id.* at 337, and a separate occasion for ACCA purposes. Likewise, in *United States v. James*, 337 F.3d 387, 391 (4th Cir.2003), we rejected a contention that the burglary of two different stores, across the street from each other, on the same day, could be part of the same "occasion." And in *United States v. Hobbs*, 136 F.3d 384, 387 & n. 5, 389 (4th Cir.1998), we observed that each of three burglaries in the space of a single hour "occurred on an occasion different from the others." *Letterlough* itself favorably commented on a Fifth Circuit case which found two separate occasions when a defendant robbed a store and then "[s]everal hours later ... returned to the very same store and robbed it again." *Letterlough*, 63 F.3d at 336–37 (citing *United States v. Washington*, 898 F.2d 439 (5th Cir.1990)).

These cases, when applied to the information contained in Thompson's PSR, compel the conclusion that Thompson committed acts of burglary on at least three separate occasions. The trial judge was entitled to rely upon the PSR because it bears the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from his prior convictions, and, moreover, Thompson never raised the slightest objection either to the propriety of its source material or to its accuracy. The PSR details three separate state court judgments, entered on different dates, in which Thompson was sentenced for burglarizing a residence. These three judgments encompass seven different counts of felony breaking and entering, taking place on six different days. And even if they had all occurred on the same day, the PSR further reveals that Thompson's court proceedings occurred in two separate jurisdictions (Davidson County and Randolph County) and that the residences he burglarized were owned by seven different people living in three different towns. Under these circumstances, our caselaw precludes any argument that the convictions represent fewer than three occasions of burglary—this is, in fact, a vastly easier case than *Letterlough*, *James*, or *Hobbs*. The line between facts that are inherent in a conviction and facts that are about a conviction is a common-sensical one, and there is no way that our conclusion as to the separateness of the occasions here can be seen to represent impermissible judicial factfinding.

The Sixth Amendment requires that facts necessary for a given sentence (other than a prior conviction) be found by a jury. But *Blakely*, *Booker*, and *Shepard* do not, of course, transmogrify what have always been questions of law into questions of fact. We therefore hold that the term "occasion" under ACCA necessarily includes burglaries like Thompson's, which were committed on distinct days in separate towns in different homes. The data necessary to determine the "separateness" of the occasions is inherent in the fact of the prior convictions. Finding distinct occasions does not require courts to stray beyond such data in the way that the

district court in *Washington* did—surmising what the contents of a given building might be, whether such contents were protected, who might have been in the building, whether such people would have been armed, what the building's security level was. *See Washington,* 404 F.3d at 841–42. Like the Second Circuit, therefore, "we are not persuaded by the defendant's contention that the separateness of the prior convictions can be distinguished from the mere fact of their existence.... " *United States v. Santiago,* 268 F.3d 151, 156 (2d Cir.2001); *see also United States v. Burgin,* 388 F.3d 177, 186 (6th Cir.2004) ("[T]he 'different occasions' requirement of § 924(e) cannot be significantly distinguished from 'the fact of a prior conviction.' ").

We find instructive the distinction between the findings required in determining an "occasion" here and the kind of wide-ranging, fact-intensive findings made in *Washington.* The district judge in *Washington* labored under the constraints of § 4B1.2(a)(2) of the Guidelines, which asked whether a prior conviction "involve[d] conduct that presents a serious potential risk of physical injury to another." *Washington,* 404 F.3d at 836. Unsurprisingly, such a nebulous standard cries out for speculation regarding facts extraneous to the prior conviction. By contrast, ACCA's use of the term "occasion" requires recourse only to data normally found in conclusive judicial records, such as the date and location of an offense, upon which *Taylor* and *Shepard* say we may rely.

No finding of fact by a jury is necessary here, therefore. Whether the burglaries occurred on different occasions does require applying the fact that they were separate episodes. But this fact is inherent in the convictions themselves, and thus is not among the kind of facts extraneous

to a conviction that *Blakely* or *Shepard* requires a jury to find. To take notice of the different dates or locations of burglaries—something inherent in the conviction—is to take notice of different occasions of burglary as a matter of law. Thompson has not offered either at sentencing or on appeal any way that his lengthy string of breakings and enterings on different days, in different towns, and in different jurisdictions can be seen by any factfinder—judge or jury—to represent fewer than three occasions. Indeed, his situation is precisely that for which ACCA was enacted.

We are hardly alone in concluding that sentences such as Thompson's are constitutional. Besides the Second Circuit in *Santiago,* many courts—both before and after *Blakely, Booker,* and *Shepard*—have shared our view. In *Wilson,* 406 F.3d at 1075, the Eighth Circuit rejected a claim under those three cases that "whether [a defendant's] prior felonies were violent offenses and whether they occurred on separate occasions should have been made by a jury...." Similarly, in *Moore,* 401 at 1224, the Tenth Circuit recognized that the *Blakely* line of cases did not require "the government [to] charge the 'fact' of a prior conviction in an indictment and submit it to a jury." In *United States v. Barnett,* 398 F.3d 516, 524–25 (6th Cir.2005), the Sixth Circuit found that *Booker* posed no obstacle to a "district court's authority to determine the existence of prior convictions," and that this authority "was broad enough to include determinations regarding the nature of those prior convictions."

Precisely because *Blakely, Booker,* and *Shepard* do not affect the "fact of conviction" exception (so long as legitimately disputed questions are resolved only with the sources approved in *Shepard* ), earlier cases which construe terms like "occasion" or "violent felony" remain authoritative. Our sister circuits have provided ample

support for our statutory construction of those terms. *See, e.g., United States v. Carnes,* 309 F.3d 950, 956 (6th Cir.2002) ("The obvious way to distinguish between these two robberies is that Carnes had to leave one residence in order to burglarize the second."); *United States v. Riddle,* 47 F.3d 460, 462 (1st Cir.1995) ("Whatever elastic there may be in [§ 924(e) ], it is not a reasonable stretch of language to describe five burglaries at five different locations on four different dates as occurring on the same occasion."); *United States v. Hudspeth,* 42 F.3d 1015, 1021 (7th Cir. 1994) (en banc) (finding separate occasions when defendant "committed three distinct burglaries against three separate victims ... in three separate locations over the course of more than thirty minutes") (footnotes omitted); *United States v. Brady,* 988 F.2d 664, 669 (6th Cir.1993) (en banc) (observing that as a matter of law "offenses committed by a defendant at different times and places and against different victims, although committed within less than an hour of each other, are separate and distinct criminal episodes and that convictions for those crimes should be counted as separate predicate convictions under § 924(e)(1)").

## IV.

Thompson's remaining arguments are entirely disposed of by our resolution of

his § 924(e) contentions, and they are therefore without merit.[5]  For the foregoing reasons, the judgment of the district court is

*AFFIRMED.*

WILKINS, Chief Judge, dissenting:

The majority holds that the district court did not violate Thompson's constitutional rights by sentencing him under the Armed Career Criminal Act (ACCA), *see* 18 U.S.C.A. § 924(e)(1) (West Supp.2005). Because I believe that Thompson's sentence violated his Fifth and Sixth Amendment rights, I respectfully dissent.[1]

## I.

Thompson pleaded guilty to an indictment alleging that he violated 18 U.S.C.A. § 922(g)(1) (West 2000) by possessing firearms after having been previously convicted "of crimes punishable by imprisonment for a term exceeding one year, that is, breaking and entering (3 counts). . . ." J.A. 5. Although not alleged in the indictment, the pre-sentence report (PSR) stated that Thompson had previously pleaded guilty to North Carolina felony breakings and enterings of residences that occurred on July 19, July 23, July 25, and October 1, 2001, and on June 18 and November 7, 2002.[2]

---

**5.** Thompson's offense level was also increased in accordance with U.S. Sentencing Guideline § 4B1.4(b)(3)(B). Thompson's prison sentence was mandated by statute and would have been unaffected by the Guidelines. The remaining parts of his sentence are consistent with the Guidelines. The facts necessary for *this sentence enhancement related to his prior convictions* and, as we have explained, were thus appropriately found by the district court.

**1.** The majority never acknowledges that Thompson asserts the Fifth Amendment claim that "the indictment to which [he] pleaded guilty did not properly allege a violation of

[the ACCA]." Br. of Appellant at 8; *see id.* at 8–9 (arguing that "the indictment omitted charging that the prior convictions ... were committed on occasions different from one another" and that Thompson "did not admit those facts necessary to justify the [ACCA] enhancement"). Rather, the majority discusses only Thompson's Sixth Amendment claim that his ACCA sentence violated his right to a jury trial. *See ante,* at 280.

**2.** The indictment did not allege the dates of the crimes underlying the breaking and entering convictions, nor did it otherwise identify the three breakings and enterings on which the Government intended to rely.

Although Thompson did not object to the facts included in the PSR, he did argue that sentencing him under the ACCA would conflict with *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), and *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), since his indictment did not allege—and he did not admit—that he had three previous convictions for violent felonies that were "committed on occasions different from one another," as 18 U.S.C.A. § 924(e) requires. The district court overruled his objection, found that he qualified as an armed career criminal, and sentenced him to 180 months' imprisonment.

## II.

Thompson argues that sentencing him under the ACCA based on the judge-found facts underlying his prior convictions, *e.g.*, the dates on which the crimes were committed, violated his constitutional rights under *Apprendi* because it increased his sentence beyond the maximum to which he would have been subject had he been sentenced based only on the facts he admitted.[3] Thompson notes that the underlying facts were necessary to establish that at least three of his qualifying prior convictions were committed on occasions different from one another (the "different occasions" determination). I agree.[4]

The Sixth Amendment requires that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. The Fifth Amendment Indictment Clause further requires that, in federal prosecutions, facts that have such an effect on the "statutory maximum" must also be included in the indictment. *See United States v. Cotton*, 535 U.S. 625, 627, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002); *United States v. Higgs*, 353 F.3d 281, 296 (4th Cir.2003). In these contexts, "statutory maximum" means "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, 124 S.Ct. at 2537 (internal quotation marks & emphasis omitted).

Here, the facts admitted by Thompson did not, by themselves, justify a conclusion that Thompson had three prior qualifying convictions for crimes committed on different occasions. And, as the Government concedes, the 15–year sentence imposed under the ACCA exceeds the maximum that could have otherwise been imposed. Thus, because Thompson's federal indictment did not allege facts establishing that he had three predicate convictions for crimes committed on different occasions, the ACCA sentence violated Thompson's

---

**3.** I note preliminarily that *United States v. Bartram*, 407 F.3d 307 (4th Cir.2005) (Widener, J.), is not controlling here. Although it is arguable that *Bartram* holds that *Apprendi* does not apply to sentences imposed after guilty pleas, *see Bartram*, 407 F.3d at 314 (Widener, J.), we had already held to the contrary in *United States v. Dinnall*, 269 F.3d 418, 423 & n. 3 (4th Cir.2001). The earlier decision is controlling. *See McMellon v. United States*, 387 F.3d 329, 333–34 (4th Cir.2004) (en banc) (holding that when two panel decisions are conflicting, the earlier decision controls unless it has been overruled by a subsequent en banc or Supreme Court decision).

**4.** Thompson also argues that the sentence was unconstitutional because his indictment did not allege that three of his prior convictions were for violent felonies or serious drug convictions. Thompson further maintains that many findings made by the district court in determining his guideline range were unconstitutional under *Blakely*. Because I would vacate Thompson's sentence for the reasons discussed, I do not address these arguments.

Fifth and Sixth Amendment rights unless the underlying facts justifying the "different occasions" determination were each subsumed by "the fact of [Thompson's] prior conviction[s]," *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348. Because they were not, Thompson's sentence was unconstitutional.

### A.

First, assuming that Thompson admitted to having three prior breaking and entering convictions, that admission alone was not sufficient to justify a legal conclusion that the crimes occurred on different occasions. "Convictions will be considered as having occurred on occasions different from one another under the ACCA if each arose out of a separate and distinct criminal episode." *United States v. Hobbs*, 136 F.3d 384, 388 (4th Cir.1998) (internal quotation marks omitted). The question of whether particular burglaries[5] were committed on different occasions depends on the facts underlying the offenses. *See United States v. James*, 337 F.3d 387, 391 (4th Cir.2003) ("The first burglary was completed before the second started, each burglary occurred at a different location, and each involved a different victim."); *Hobbs*, 136 F.3d at 389 ("It is undisputed that the three burglaries all occurred at least a mile apart from each other, and in two different towns.").

Thompson's admission to having three prior burglary convictions did not warrant a legal conclusion that the burglaries were committed on different occasions because separate burglaries are not necessarily committed on different occasions as a matter of law. Although it may be rare that a defendant is convicted of two burglaries that were committed on a single occasion,

it certainly could happen. For example, a defendant could be convicted of two burglaries for having kept lookout while his coconspirators simultaneously broke into two neighboring buildings that were owned by the same victim. *Cf. Hobbs*, 136 F.3d at 388 (considering, in determining whether offenses were committed on different occasions, (1) the geographic location of the offenses, (2) the nature of the offenses, and (3) the victim of the offenses); *United States v. Letterlough*, 63 F.3d 332, 337 (4th Cir.1995) (holding that two drug sales were on different occasions because "[t]he time separating the offenses was ample to give [the defendant] the opportunity to make a conscious and knowing decision to engage in another drug sale"). Thus, the mere fact that Thompson had been convicted of three separate burglaries is not sufficient *as a matter of law* to establish that the three burglaries were committed on three different occasions; further facts were needed to reach that conclusion and thereby authorize the 15–year sentence imposed. Of course, such facts were contained in the PSR, and Thompson did not object on the basis that they were false. He maintained, however, as he continues to maintain now, that they could not be used to increase his maximum sentence because they were not alleged in his indictment or otherwise admitted by him.

The Government maintains that in addition to admitting the three convictions, Thompson also admitted the facts underlying the crimes that produced the convictions because he was notified before his plea that he could be sentenced under the ACCA and because he failed to object to the inclusion of these underlying facts in the PSR. The Government construes "admitted" too broadly.

---

**5.** North Carolina breaking and entering offenses are burglaries. *See United States v.*

*Bowden*, 975 F.2d 1080, 1085 (4th Cir.1992).

In *United States v. Thomas*, 389 F.3d 424 (3d Cir.2004), *vacated*, —— U.S. ——, 125 S.Ct. 2953, 162 L.Ed.2d 864 (2005), the Third Circuit noted:

> There are at least four possible interpretations of the language "facts . . . admitted by the defendant." First, that language could refer to facts set forth in the indictment to which the defendant pled guilty. Second, it could refer to facts set forth in the written plea agreement entered into by the defendant. Third, it could be limited to the facts necessary to prove a violation of the offense charged in the indictment. Fourth, it could refer to facts admitted in the colloquy with the District Court.

*Thomas*, 389 F.3d at 426 (alteration in original). It is not necessary for me to determine today the exact contours of the term "admitted" in this context because nothing that Thompson did in this case approached an admission of the underlying facts. The Government claims that Thompson "admitted" the necessary facts by entering into a plea agreement that stated that the mandatory minimum sentence would be 15 years. (The Government adds that the district court informed Thompson—and the PSR stated—that 15 years would be the mandatory minimum sentence if he had the necessary qualifying offenses.) In fact, the plea agreement stated that the "maximum" term faced by Thompson would be 15 years to life but that this range would not apply if "the Court determines . . . that . . . Section 924(e)(1) is not applicable." J.A. 23–24. Thompson's acceptance of this agreement was not the equivalent of an admission to the facts necessary to justify application of the ACCA. *Cf. United States v. Estrada*, 42 F.3d 228, 231–32 (4th Cir.1994) (holding that defendant's acknowledgment that he was subject to a five-year mandatory mini-

mum did not constitute admission of the facts necessary to trigger the mandatory minimum when defense counsel mistakenly believed that the five-year mandatory minimum would be triggered even without the facts at issue).

The Government also maintains that Thompson admitted the underlying facts because the facts were contained in Thompson's PSR and Thompson did not object to the relevant portion of the PSR. It is true that in the specific context of sufficiency of the evidence to support a judicial finding of fact by a preponderance of the evidence, a failure to object to a fact included in the PSR has the same legal effect as an admission to that fact. *See* Fed.R.Crim.P. 32(i)(3) ("At sentencing, the court . . . may accept any undisputed portion of the pre-sentence report as a finding of fact."). It certainly does not follow, however, that a failure to object to facts included in a PSR is equivalent to an admission in all contexts. Such inaction, in my view, does not operate as a waiver of Thompson's constitutional right—which he explicitly asserted—to have a fact charged in his indictment when that fact is being used to increase the maximum sentence to which he is subject. *See Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938) ("[C]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . do not presume acquiescence in the loss of fundamental rights." (internal quotation marks & footnote omitted)). *But cf. United States v. McCully*, 407 F.3d 931, 933 (8th Cir.2005) (holding, without significant explanation, that the failure to object to a fact stated in a PSR is an admission for Sixth Amendment purposes); *United States v. Fagans*, 406 F.3d 138, 142 (2d Cir.2005) (same).[6]

---

**6.** The majority apparently adopts this argu-    ment of the Government's. *See ante,* at 284 –

### B.

Because the facts admitted by Thompson were not sufficient to warrant an ACCA sentence, the district court increased Thompson's sentence beyond the "statutory maximum" when it relied on the underlying facts. And, as explained below, since none of these facts were subsumed by the "fact of a prior conviction," *Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348, the ACCA sentence violated Thompson's Fifth and Sixth Amendment rights.

To understand why none of the underlying facts were subsumed by the "fact of a prior conviction," an examination of *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), and *Apprendi* is in order. The statute at issue in *Almendarez–Torres*, 8 U.S.C.A. § 1326 (West 1999 & Supp.2005), forbids an alien who once was deported to return to the United States without special permission. Subsection (a) authorizes a prison term of no more than two years. *See* 8 U.S.C.A. § 1326(a). Subsection (b)(2) authorizes a prison term of up to 20 years for "any alien described" in subsection (a), if the initial "removal was subsequent to a conviction for commission of an aggravated felony." *Id.* § 1326(b)(2). Almendarez–Torres pleaded guilty to an indictment charging him with having been "found in the United States ... after being deported" without the "permission and consent of the Attorney General" in "violation of ... Section 1326." *Almendarez–Torres*, 523 U.S. at 227, 118 S.Ct. 1219 (internal quotation marks omitted & alterations in original). At a hearing before his guilty plea was accepted, he admitted that he had been deported, that he had later returned to the United States unlawfully, and that the deportation had occurred "pursuant to" three prior "convictions" for aggravated felonies. *Id.* (internal quotation marks omitted).

The Supreme Court held that a sentence imposed under subsection (b)(2) was not unconstitutional even though the facts supporting application of that subsection had not been alleged in the indictment. *See id.* at 247, 118 S.Ct. 1219. In reaching this conclusion, the Court relied primarily on the distinct nature of prior convictions, which traditionally had not been required to be charged in indictments. *See id.* at 243–44, 118 S.Ct. 1219. The Court also noted that it had previously held that facts triggering mandatory minimums need not be treated as offense elements, *see McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986), and the Court reasoned that prior convictions triggering increases in the maximum sentence should not be treated differently. *See Almendarez–Torres*, 523 U.S. at 244–45, 118 S.Ct. 1219.

---

285 (concluding that Thompson's Sixth Amendment jury trial rights were not violated because, in light of his failure to challenge the truth of the facts included in the PSR, "there is [no] *disputed* question of fact extraneous to Thompson's prior convictions" regarding whether he had three prior convictions for violent felonies committed on different occasions (emphasis added)). The majority does not fully explain why it apparently affords constitutional significance to the fact that facts sufficient to warrant an ACCA sentence were included in the PSR and not objected to by Thompson. However, it appears that this perceived significance is based on the plurality opinion in *Shepard*, wherein the plurality characterized *Jones v. United States*, 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), and *Apprendi* as "guarantee[ing] a jury's finding of any *disputed* fact essential to increase the ceiling of a potential sentence," *Shepard*, 125 S.Ct. at 1262 (plurality opinion) (emphasis added). But, there simply is no indication that by "disputed fact" the plurality meant anything more than a fact at issue, *i.e.*, a fact that the defendant did not affirmatively concede.

In *Apprendi*, the Supreme Court, in addressing the constitutionality of a New Jersey hate-crime sentencing enhancement, explained that the result in *Almendarez–Torres* was due largely to two factors: "the certainty that procedural safeguards attached to any 'fact' of prior conviction" and the fact that Almendarez–Torres had admitted the existence of the prior convictions. *Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348. The *Apprendi* Court also indicated that *Almendarez–Torres* was arguably "incorrectly decided," *id.* at 489, 120 S.Ct. 2348, and "represent[ed] at best an exceptional departure from the historic practice" of requiring that facts establishing a defendant's maximum sentence be treated as offense elements, *see id.* at 487, 120 S.Ct. 2348. Despite these observations, the Court declined to revisit the decision and instead created an exception to the constitutional rule that it announced: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490, 120 S.Ct. 2348.[7] In explaining why the hate-crime enhancement in *Apprendi* was not constitutional under *Almendarez–Torres*, the Court emphasized that "[w]hereas recidivism does not relate to the commission of the offense itself, New Jersey's biased purpose inquiry goes precisely to what happened in the commission of the offense." *Id.* at 496, 120 S.Ct. 2348 (citation & internal quotation marks omitted). The Court added that "there is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." *Id.; see Jones v. United States*, 526 U.S. 227, 249, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999) (explaining that one important reason that the fact of a prior conviction need not be treated as an offense element is that "a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees").

Here, the majority holds that the date on which a prior crime was committed is a "fact of a prior conviction," *see ante*, at 282, but in my view it is a fact "*about* a prior conviction," *Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 1262, 161 L.Ed.2d 205 (2005) (plurality opinion) (emphasis added); *cf. United States v. Washington*, 404 F.3d 834, 841–42 (4th Cir.2005) (drawing this distinction and holding that facts about an offense underlying a prior conviction fell outside the "fact of a prior conviction" exception when they were not alleged in the indictment that produced the prior conviction), or, more precisely, a fact about an offense underlying a prior conviction. This distinction is not merely a matter of semantics. Although a defendant is entitled to a

---

7. Although the overruling of *Almendarez–Torres* appears imminent, *see Shepard v. United States*, —— U.S. ——, 125 S.Ct. 1254, 1264, 161 L.Ed.2d 205 (2005) (Thomas, J., concurring in part and concurring in the judgment) ("*Almendarez–Torres* ... has been eroded by this Court's subsequent Sixth Amendment jurisprudence, and a majority of the Court now recognizes that *Almendarez–Torres* was wrongly decided."), until overruling occurs, we must follow the decision when it controls, *see Agostini v. Felton*, 521 U.S. 203, 237, 117 S.Ct. 1997, 138 L.Ed.2d 391 (1997) (reserving "prerogative of overruling its own decisions" even if ruling "appears to rest on reasons rejected in some other line of decisions" (internal quotation marks omitted)).

jury trial on the question of whether he committed a particular crime, in few, if any cases is a jury required to find that the offense occurred on a particular date.[8] Thus, the protections that the Supreme Court identified as critical to the distinctiveness of the "fact of a prior conviction" are not customarily afforded a defendant with regard to the date that a crime was committed.[9]

I recognize that some courts have rejected this reason for concluding that the different-occasions fact falls outside the *Almendarez–Torres* exception. *See United States v. Burgin*, 388 F.3d 177, 184–86 (6th Cir.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 1692, 161 L.Ed.2d 506 (2005); *United States v. Morris*, 293 F.3d 1010, 1012–13 (7th Cir.2002); *United States v. Santiago*, 268 F.3d 151, 155–57 (2d Cir. 2001). I am not persuaded by these decisions, however.

*Burgin* holds that the fact that past crimes were committed on different occasions is "intimately related" with the fact of the prior convictions because "[i]n the usual case, ... a district court's determination that a defendant has a record of prior convictions will be accompanied by the judge's determination of when those convictions were entered." *Burgin*, 388 F.3d at 186. But this analysis fails to appreciate that it is not the prior *convictions* that must be on occasions separate from one another, but rather the *crimes* underlying the prior convictions. This difference is significant because while the date of conviction is a matter likely to be conclusively resolved by court record, the same is not necessarily true of whether underlying crimes were committed on different occasions, for the reasons I have already discussed.

*Santiago* and *Morris* are similarly unpersuasive. Those decisions are based in large part on the observation that even determining the fact of prior convictions entails making findings beyond those to which the defendant had a right to fair notice, proof of guilt beyond a reasonable doubt, and a jury trial, such as the determination "that the defendant being sentenced is the *same* defendant who previously was convicted of those prior offenses." *Santiago*, 268 F.3d at 156; *accord Morris*, 293 F.3d at 1013.

Such analysis notwithstanding, the Supreme Court in both *Jones* and *Apprendi* made clear that "the certainty that procedural safeguards attached to any 'fact' of prior conviction" was critical to the outcome in *Almendarez–Torres*. *Apprendi*, 530 U.S. at 488, 120 S.Ct. 2348; *accord*

---

**8.** To illustrate, if a defendant is charged with breaking and entering a building on or about a particular date, a jury, in order to convict, must find that the defendant committed the offense, but it need not conclude beyond a reasonable doubt that the offense was committed on the exact date alleged in the indictment. The fact that a conviction may be overturned under certain circumstances if the evidence presented at trial tended to prove that the defendant committed the offense of conviction on a date different from that alleged in the indictment is not relevant to the issue before us. *See United States v. Randall*, 171 F.3d 195, 203 (4th Cir.1999) (setting out the test for determining whether a constructive amendment has occurred). The point is that even when the government's evidence tends to support a finding that the offense was committed on the date alleged in the indictment, the jury is not necessarily required to credit that evidence in order to convict.

**9.** The majority notes that determining the date of the crime underlying a conviction "requires recourse only to data normally found in conclusive judicial records." *Ante,* at 285. But, the fact that judicial records list a date on which a crime was committed does not mean that the defendant had the right to have that date found by a jury beyond a reasonable doubt, and that is the critical point.

*Jones,* 526 U.S. at 249, 119 S.Ct. 1215. *Santiago* and *Morris* simply overlook this emphasis by the Supreme Court on the procedural safeguards that attach to the fact of a prior conviction. In so doing, these courts broaden the scope of the "narrow" exception that the Supreme Court created for "the fact *of* a prior conviction," *Apprendi,* 530 U.S. at 490, 120 S.Ct. 2348 (emphasis added), to include facts *about* a crime underlying a prior conviction. I do not believe we are at liberty to reject either the rule announced by the Supreme Court in *Apprendi* or the analysis that the Court employed to shape that rule. Thus, I would employ *Apprendi's* analysis and rule and hold that the facts underlying Thompson's prior convictions, including the dates on which he committed the underlying crimes, do not fit within the "fact of a prior conviction" exception.[10]

### C.

One final point merits attention. In determining that the district court acted constitutionally in imposing an ACCA sentence based on the facts underlying Thompson's prior convictions, the majority draws support from the fact that the judicial factfinding here did not run afoul of *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In so doing, the majority fails, in my view, to appreciate the difference between running afoul of *Taylor,* which concerns *statutory* restrictions on judicial factfinding relating to whether prior convictions satisfy the ACCA, and violating *Apprendi* and its progeny, which concern *constitutional* restrictions regarding which facts must be charged in the indictment and found by a jury beyond a reasonable doubt. *Taylor* instructs that under some circumstances § *924(e)* allows a district court to utilize certain documents to make findings regarding the facts underlying a prior conviction. *See Taylor,* 495 U.S. at 602, 110 S.Ct. 2143. *Taylor* does not seek to resolve any constitutional issue, and it certainly does not address what facts the Fifth Amendment requires to be charged in the indictment. Thus, the mere fact

10. In concluding that the date on which a crime underlying a prior conviction was committed is subsumed by the "fact of a prior conviction," the majority cites several additional decisions from other circuits as support. *See United States v. Wilson,* 406 F.3d 1074 (8th Cir.2005); *United States v. Moore,* 401 F.3d 1220 (10th Cir.2005); *United States v. Barnett,* 398 F.3d 516 (6th Cir.2005). These decisions are no help to the majority, however. Although they support the result reached in the majority opinion, they do so on the basis that *any fact* regarding the nature of a prior conviction is subsumed by the "fact of a prior conviction." *See Barnett,* 398 F.3d at 524 ("*Apprendi* does not require the *nature* or *character* of prior convictions to be determined by a jury." (emphasis added)); *accord Wilson,* 406 F.3d at 1075; *Moore,* 401 F.3d at 1223. Because our circuit has already rejected this broad premise, *see Washington,* 404 F.3d at 841–43, these decisions are of no persuasive value here.

Additionally, I note that my conclusion is not foreclosed by *United States v. Sterling,* 283 F.3d 216 (4th Cir.2002). There, the defendant argued that his sentence under the ACCA violated the *Apprendi* rule "because the government did not prove his three prior qualifying felony convictions beyond a reasonable doubt." *Sterling,* 283 F.3d at 219. We affirmed the sentence, holding that the existence of the prior convictions fell within the *Almendarez–Torres* exception to the *Apprendi* rule. *See id.* at 220. In so doing, we rejected the notion that *Apprendi* had overruled *Almendarez–Torres* and held that "the district court appropriately used Sterling's prior convictions to enhance his sentence under the [ACCA]." *Id.* There is no indication in the opinion, however, that Sterling, in addition to arguing that the prior conviction exception had been overruled, also maintained that the exception did not apply to the "different occasions" determination. For that reason, *Sterling* does not control the outcome of this issue.

that the judicial factfinding here was consistent with the *statutory* restrictions outlined in *Taylor* says nothing about whether increasing Thompson's maximum sentence based on extra-indictment facts was unconstitutional.[11]

For the same reason that *Taylor* is not controlling, neither is *Shepard.* In *Shepard,* the Court addressed whether *Taylor* should be extended to allow district courts to consider documents beyond those that *Taylor* had specifically sanctioned. Although four justices opined that extending the statutory rule would present serious constitutional questions, not even these four justices reached the issue of whether sentences based on *Taylor* factfinding could violate the constitutional rule announced in *Apprendi. See Shepard,* 125 S.Ct. at 1262–63 (plurality opinion). It is noteworthy, however, that Justice Thomas, who did address that question, concluded that *Taylor* factfinding violates *Apprendi. See id.* at 1263–64 (Thomas, J., concurring in part and concurring in the judgment).[12]

### III.

In sum, because I would vacate Thompson's sentence as violative of the Fifth and Sixth Amendments and remand for resentencing, I respectfully dissent.

---

11. It is noteworthy that *Taylor* characterized the evidence that a district court may consider under § 924(e) as being "beyond the mere fact of conviction." *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143.

12. The majority notes that if the *Shepard* plurality had agreed with the interpretation of the prior conviction exception that I accept, "it could have saved itself great trouble" by simply deciding that case on that constitutional basis. *Ante,* at 282. This analysis overlooks that the practice of the Supreme Court is "to avoid reaching constitutional questions if a dispositive nonconstitutional ground is available." *Hutchinson v. Proxmire,* 443 U.S. 111, 122, 99 S.Ct. 2675, 61 L.Ed.2d 411 (1979).

The majority also utilizes the *Shepard* dissent and the *Shepard* plurality opinion to conclude that seven justices believe that the *Taylor* rule is of constitutional dimension. *See ante,* at 282 n. 3. Even if I agreed with the majority's interpretation of the plurality opinion—and I do not for the reason already discussed—it would not change my view that the facts underlying the crimes that produced Thompson's convictions were not subsumed by the "fact of a prior conviction." In interpreting the scope of the *Apprendi* rule we must apply the analysis that the *Apprendi* Court employed in fashioning that rule rather than the legal analyses of separate opinions in *Shepard* that were not even the basis for the decision in that case.