**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 04-4248

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

AL JAMES SMITH,

Defendant - Appellant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh.  Louise W. Flanagan, District Judge.  (CR-03-195-1)

Submitted:  September 30, 2005          Decided:  November 3, 2005

Before LUTTIG, MICHAEL, and TRAXLER, Circuit Judges.

Affirmed by unpublished per curiam opinion.

Geoffrey W. Hosford, HOSFORD & HOSFORD, P.L.L.C., Wilmington, North Carolina, for Appellant.  Frank D. Whitney, United States Attorney, Anne M. Hayes, Christine Witcover Dean, Assistant United States Attorneys, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

PER CURIAM:

Al James Smith appeals from his conviction and sentence imposed for making a false statement in acquisition of a firearm, in violation of 18 U.S.C. § 922(a)(6) (2000), being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (2000), engaging in the business of dealing in firearms without a license, in violation of 18 U.S.C. § 922(a)(1)(A) (2000), and conspiracy to engage in the business of dealing in firearms without a license, in violation of 18 U.S.C. §§ 371, 922(a)(1)(A) (2000). Finding no error, we affirm.

I

Smith challenges the district court's decision to admit the testimony of an expert on handwriting comparison analysis. The Government presented Carl McClary, a questioned document examiner with the ATF, to give his opinion on whether Smith's known handwriting samples matched the signatures on the completed ATF 4473 forms used to purchase the handguns at Cumberland Pawn Shop.

The district court's decision to admit expert testimony is reviewed for abuse of discretion. Gen. Elec. Co. v. Joiner, 522 U.S. 136, 139 (1997); United States v. Powers, 59 F.3d 1460, 1470-71 (4th Cir. 1995). The introduction of expert opinion testimony is governed by Federal Rule of Evidence 702, which provides that "[i]f scientific, technical, or other specialized knowledge will

assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert . . . may testify thereto in the form of an opinion or otherwise." Fed. R. Evid. 702. Expert testimony is admissible under Rule 702, then, if it concerns (1) scientific, technical, or other specialized knowledge, (2) that will aid the jury or other trier of fact to understand or resolve a fact at issue. Daubert v. Merrill Dow Pharms., Inc., 509 U.S. 579, 592 (1993); see also Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999) (extending Daubert's two-part gatekeeping test to all expert testimony).

This court has held in a challenge to handwriting comparison analysis that such evidence is admissible. United States v. Crisp, 324 F.3d 261, 270-71 (4th Cir.), cert. denied, 540 U.S. 888 (2003). We found that "every circuit to have addressed the issue has concluded . . . that such evidence is properly admissible." Crisp, 324 F.3d at 270. We noted "[t]he fact that handwriting comparison analysis has achieved widespread and lasting acceptance in the expert community gives [it] the assurance of reliability that Daubert requires." Id. at 271. In addition, because the role of the handwriting expert "is primarily to draw the jury's attention to similarities between a known exemplar and a contested sample," a jury is left to decide for itself whether to agree with the expert. Id. We also stated that the defendant had not presented any reason to doubt the reliability of handwriting

analysis evidence.  Id.  Lastly, cross-examination is available to show any shortcomings in the testimony.  Id.; see Daubert, 509 U.S. at 588-89.

Here, as in Crisp, the defendant did not present any evidence that handwriting analysis was unreliable.  There was no challenge to McClary's testimony that, during the ten years that he has testified, handwriting comparison has been generally accepted.  Further, McClary testified that he helped develop standards for examination of questioned documents.  He was certified by a non-governmental agency.

Under Daubert, the district court need not:

> expend scarce judicial resources reexamining a familiar form of expertise every time opinion evidence is offered. In fact, if a given theory or technique is 'so firmly established as to have attained the status of scientific law,' then it need not be examined at all, but instead may properly be subject to judicial notice.

Crisp, 324 F.3d at 268 (quoting Daubert, 509 U.S. at 592 n.11).  In Crisp, this court found that handwriting analysis has the reliability that Daubert requires even if it does not have the status of scientific law.  Crisp, 324 F.3d at 271.  Finally, cross-examination was available to show any shortcomings in the testimony.  Id.; see Daubert, 509 U.S. at 588-89.  We therefore conclude that the district court did not abuse its discretion in admitting McClary's testimony.

ATF Agent Don Baucom's testimony was introduced to show that the firearms had previously traveled in interstate commerce, in order to fulfill the "interstate nexus" of the firearm possession charge. 18 U.S.C. § 922(g) (2000). Smith argues that Agent Baucom had insufficient training and experience to qualify as an expert.

We hold that the trial court did not abuse its discretion by allowing a specially trained agent to testify that the firearms in question were manufactured outside North Carolina and had traveled in interstate commerce. The agent had sufficient experience and knowledge to qualify him to testify about the origin of the firearms in question.

It was established at trial that Baucom was an ATF agent who had extensive training in firearms, had handled 2000 firearms since his first interstate nexus training, and had previously testified in court regarding the interstate nexus of firearms after having received advanced specialized training on the subject in 2002. We therefore conclude that the trial court did not abuse its discretion by admitting Agent Baucom's testimony. See Powers, 59 F.3d at 1470-71.

III

Smith assigns error to the district court's denial of his motion for judgment of acquittal on the felon in possession of a firearm counts. He focuses his argument on possession of the gun found under the car seat during his arrest on February 13, 2003, and then states that there is even less evidence supporting possession on the dates charged: February 11, 2003, April 9, 2003, and May 5, 2003. The Government notes, however, that the felon in possession counts stem from the pawn shop purchases and not the firearm in his presence on the date of arrest.

A defendant challenging the sufficiency of the evidence faces a heavy burden. See United States v. Beidler, 110 F.3d 1064, 1067 (4th Cir. 1997). In reviewing a sufficiency challenge, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). This court "ha[s] defined 'substantial evidence,' in the context of a criminal action, as that evidence which 'a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt.'" United States v. Newsome, 322 F.3d 328, 333 (4th Cir. 2003) (quoting United States v. Burgos, 94 F.3d 849, 862 (4th Cir. 1996)).

- 6 -

We find that there was substantial evidence to support the verdict that Smith possessed the firearms. Employees of Cumberland Pawn Shop identified Smith as the person to whom they sold the firearms, and the employees testified that they gave him the firearms at the time of sale. The driver's licenses used in connection with the sales were found at Smith's residence and had Smith's photograph on them. Reginald Currie, Smith's co-conspirator, testified that he and Smith took firearms to New York where a friend, Flowers, sold them. Smith, Currie, and Flowers were arrested together in New York in a car co-owned by Smith and his girlfriend, two days after Smith purchased the firearms in North Carolina. At the time of his arrest, Smith had $1,800 and a small amount of cocaine on his person. The possession of the drugs and money was consistent with Currie's testimony that Smith sold the guns at an approximate value of $700 each in cash and drugs. We therefore conclude that viewing the evidence in the light most favorable to the Government, the district court did not err in denying the motion for acquittal.

IV

Last, Smith contends that his sentence was increased based upon facts that were not found by a jury beyond a reasonable doubt. He did not raise this issue in the district court,

- 7 -

therefore it is reviewed for plain error.  United States v. Hughes,
401 F.3d 540 (4th Cir. 2005).

Smith's base offense level was increased based on the
number of firearms involved in the offense.  However, these
enhancements did not affect the final sentence.  It was not plain
error for the district court to apply the Sentencing Guidelines in
light of United States v. Booker, 125 S. Ct. 738 (2005), because
Smith was sentenced under the Armed Career Criminal Act, which
determined his Guideline range.  Smith's claim is foreclosed by
circuit precedent.  See United States v. Thompson, 421 F.3d 278,
284-86 (4th Cir. 2005) (holding that prior convictions could not be
severed from their essential components, and these components
include integral facts such as the statutory violation and date of
offense, therefore these facts were inherent to convictions not
extraneous to them); United States v. Cheek, 415 F.3d 349, 350 (4th
Cir. 2005) (holding that defendant's Sixth Amendment right to trial
by a jury was not violated by district court's reliance on his
prior convictions for purposes of sentencing under the Armed Career
Criminal Act).

Moreover, on appeal, Smith does not challenge any factual
findings regarding the prior convictions, and he does not dispute
the factual basis for the district court's conclusions that he was
an armed career criminal.  Accordingly, Smith's assertion that his
sentence violated the Sixth Amendment is without merit.  See United

States v. Collins, 412 F.3d 515, 523 (4th Cir. 2005) (holding that, where defendant did not dispute any of the facts supporting the career offender status in district court, there is no constitutional violation in relying on defendant's prior convictions).

To the extent that Smith contests his sentence based upon the mandatory nature of the application of the Sentencing Guidelines, the claim is without merit. In United States v. White, 405 F.3d 208 (4th Cir. 2005), we determined that imposing a sentence under the Guidelines as mandatory was error that was plain. 405 F.3d at 216-17. However, we then discussed the third prong of the plain error analysis. In determining whether an error affected the defendant's substantial rights, we reasoned that "the error of sentencing a defendant under a mandatory guidelines regime" was not an error for which prejudice would be presumed. Id. at 219-20, 224. Rather, the defendant bears the burden of showing that this error prejudiced him, or "'affected the outcome of the district court proceedings.'" Id. at 223 (quoting United States v. Olano, 507 U.S. 725, 734 (1993)).

Here, Smith provides no non-speculative basis for concluding that the treatment of the Guidelines as mandatory affected the selection of the sentence imposed. He points to his personal circumstances of an impoverished childhood and an adult life addicted to drugs that under the Guidelines did not qualify

him for a downward departure.  However, the district court did not make any statements indicating that it wished to impose a sentence below the Guideline range.  In fact, it imposed a sentence at the high-end of the Guideline range and specifically noted that Smith had an extensive criminal history with twenty-three prior felony convictions and had not taken advantage of the many opportunities to reform his behavior.  We therefore conclude that Smith cannot succeed on a claim challenging the mandatory application of the Guidelines.

We therefore affirm the judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED</u>